## SMITH *v.* STATE OF TEXAS.

### ERROR TO THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS.

No. 268. Argued March 12, 1914.—Decided May 11, 1914.

Life, liberty, property and equal protection of the laws as grouped together in the Constitution are so related that the deprivation of any one may lessen or extinguish the value of the others.

In so far as a man is deprived of the right to labor, his liberty is restricted, his capacity to earn wages and acquire property is lessened, and he is denied the protection which the law affords those who are permitted to work.

Liberty means more than freedom from servitude; and the constitutional guarantee is an assurance that the citizen shall be protected in the right to use his powers of mind and body in any lawful calling.

A State may prescribe qualifications and require an examination to test the fitness of any person to engage, or remain, in the public calling.

While the State may legislate in regard to the fitness of persons privately employed in a business in which public health and safety are concerned, the tests and prohibitions must be enacted with reference to such business, and not so as to unlawfully interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. *Lawton* v. *Steele*, 152 U. S. 133.

Arbitrary tests by which competent persons are excluded from lawful employment must be avoided in state regulations of employment in private business affecting public health and safety. *Smith* v. *Alabama*, 124 U. S. 465.

The statute of Texas of 1909 prohibiting any person from acting as a conductor on a railroad train without having for two years prior thereto worked as a brakeman or conductor of a freight train and prescribing no other qualifications, excludes the whole body of the

public from the right to secure employment as conductors and amounts, as to persons competent to fill the position but who have not the specified qualification, to a denial of the equal protection of the law.

A State cannot, in permitting certain competent persons to accept a specified private employment, lay down a test which absolutely prohibits other competent persons from entering that employment.

*Quære*, whether such a statute is not also unconstitutional under the Commerce Clause as applied to conductors employed on trains engaged in interstate commerce.

THE facts, which involve the constitutionality of the statute of Texas of 1909 prescribing qualifications for conductors on railroad trains, are stated in the opinion.

*Mr. Gardiner Lathrop*, with whom *Mr. Robert Dunlap* was on the brief, for plaintiff in error:

The Texas statute deprives defendant, without due process of law, of liberty to engage in a lawful occupation for which he was shown to be well fitted and denies to him the equal protection of the laws. *Yick Wo* v. *Hopkins*, 118 U. S. 369; *Barbier* v. *Connolly*, 113 U. S. 31; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 559; *Lochner* v. *New York*, 198 U. S. 53; *Adair* v. *United States*, 208 U. S. 173; *Dent* v. *West Virginia*, 129 U. S. 114, 124, 125; *Reetz* v. *Michigan*, 188 U. S. 508, 509; Cooley's Const. Lim., 7th ed., pp. 889, 890; *Bank of Columbia* v. *Okely*, 4 Wheat., p. 244; *Marbury* v. *Madison*, 1 Cranch, 176; *Wyeth* v. *Thomas*, 200 Massachusetts, 474; *Josma* v. *Western Car Co.*, 249 Illinois, 508; *Bonnett* v. *Vallier*, 136 Wisconsin, 193; *Chenoweth* v. *Examiners*, 135 Pac. Rep. 771; *Ruhstrat* v. *People*, 185 Illinois, 133, 141, 142; *People* v. *Schenck*, 257 Illinois, 384; *In re Opinion of Justices*, 211 Massachusetts, 618; *Morgan* v. *State*, 101 N. E. Rep. 7; *State* v. *Wagener*, 69 Minnesota, 206; *Commonwealth* v. *Snyder*, 182 Pa. St. 630; *State* v. *Kreutzberg*, 114 Wisconsin, 530; *People* v. *Hawkins*, 157 N. Y. 7; *Vicksburg* v. *Mullane*, 63 So. Rep. 412.

As to what is an arbitrary classification, see *G., C. &*

*S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150; *Connolly* v. *Union Pipe Co.,* 184 U. S. 549; *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79; *Smith* v. *Examiners,* 88 Atl. Rep. 963; *Little* v. *Tanner,* 208 Fed. Rep. 605, 609.

An enactment cannot invade the rights of persons and property under the guise of a police regulation when it is not such in fact. *Eden* v. *People,* 161 Illinois, 296; *People* v. *Marx,* 99 N. Y. 377; *Ritchie* v. *People,* 155 Illinois, 98; *Smith* v. *Alabama,* 124 U. S. 465; *N. C. & St. L. Ry.* v. *Alabama,* 128 U. S. 96; *Williams* v. *Arkansas,* 217 U. S. 79; *Watson* v. *Maryland,* 218 U. S. 173; *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *Lawton* v. *Steele,* 152 U. S. 137; *Minnesota* v. *Barber,* 136 U. S. 319; *Brimmer* v. *Rebman,* 138 U. S. 78; *Henderson* v. *New York,* 92 U. S. 259, 268; *Eubank* v. *Richmond,* 226 U. S. 137; *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Butchers' Union* v. *Crescent City Co.,* 111 U. S. 761.

The Texas statute is an unreasonable interference with the carrying on of interstate commerce. *Adams Express Co.* v. *New York,* 232 U. S. 14; *Savage* v. *Jones,* 225 U. S. 525; *Yazoo & Miss. R. R.* v. *Greenwood Grocery Co.,* 227. U. S. 1, 3; *Houston & Tex. Cent. R. R.* v. *Mayes,* 201 U. S. 321; *Central Ry. Co.* v. *Murphy,* 196 U. S. 194, 203, 204.

*Mr. B. F. Looney,* Attorney General of the State of Texas, and *Mr. Luther Nickels,* for defendant in error, submitted:

The general purpose of the act was within the police power of the State. *Lochner* v. *New York,* 198 U. S. 53; *Mugler* v. *Kansas,* 123 U. S. 623; *In re Kemmler,* 136 U. S. 436; *Crowley* v. *Christensen,* 137 U. S. 86; *In re Converse,* 137 U. S. 624.

A State may prohibit unqualified men from occupying responsible positions in train operation. *Smith* v. *Alabama,* 124 U. S. 465; *N. C. & St. L. Ry. Co.* v. *Alabama,* 128 U. S. 96.

The State has the power to prevent individuals from

making certain kinds of contracts in regard to which the Federal Constitution offers no protection. *Smith* v. *Alabama*, 124 U. S. 465; *N. C. & St. L. Ry. Co.* v. *Alabama*, 128 U. S. 96; *Olsen* v. *Smith*, 195 U. S. 332; *Otis* v. *Parker*, 187 U. S. 606; *Holden* v. *Hardy*, 169 U. S. 366; *Northern Securities Co.* v. *United States*, 193 U. S. 197; *St. L., I. M. &c. Ry. Co.* v. *Paul*, 173 U. S. 404; *Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13; *Allgeyer* v. *Louisiana*, 165 U. S. 578.

A man has no right to engage in or pursue any calling, the proper prosecution of which requires a certain amount of technical knowledge or professional skill, the lack of which may result in material injury to the public or individuals, which can be controlled in all cases, or, in proper cases, be taken away by state legislation. *Lochner* v. *New York*, 198 U. S. 53; *Smith* v. *Alabama*, 124 U. S. 465; *N. C. St. L. Ry. Co.* v. *Alabama*, 128 U. S. 96; *Olsen* v. *Smith*, 68 S. W. Rep. 320; *S. C.*, 195 U. S. 332; 1 Tiedeman, p. 242.

The legislature, having the power to prevent unqualified men from pursuing the occupation of conductors, had also the power to classify and the power to prescribe the one qualification of prior service. *McCulloch* v. *Maryland*, 4 Wheat. 316, 421; *License Cases*, 5 How. 504; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Missouri &c. Ry. Co.* v. *May*, 194 U. S. 267; *Gundling* v. *Chicago*, 177 U. S. 183, 188.

If the statute admits of two constructions, one of which is a reasonable exercise of the police power and the other is unreasonable, in that it promotes or does not promote the public interests, the former construction should be adopted, and the statute sustained as constitutional. *People* v. *Warden*, 144 N. Y. 529; 1 Tiedeman, p. 235.

The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity. *Dent* v. *West Virginia*, 129 U. S. 122; *Watson* v. *Maryland*, 218 U. S. 173; *State* v. *Loomis*, 115 Missouri, 307; *G., C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 155; *Jones* v. *Brim*, 165 U. S. 180, 183; *Hawker* v. *New*

*York,* 170 U. S. 197, 198; *County. Seat* v. *Linn County,* 15 Kansas, 500, 528.

As to the extent to which the State may go in saying what classes shall be prohibited from engaging in an occupation, and in saying what qualifications those who are permitted to enter shall have, see *Ex parte Lockwood,* 154 U. S. 116; *Bradwell* v. *Illinois,* 16 Wall. 130; *Dent* v. *West Virginia,* 129 U. S. 122; *Hawker* v. *New York,* 170 U.. S. 189; *Williams* v. *People,* 9 West. Rep. 461; 121 Illinois, 84; *State* v. *Creditor,* 44 Kansas, 565; *State* v. *Vandersluis,* 42 Minnesota, 129.

The statute does not constitute a direct regulation of interstate commerce. *Smith* v. *Alabama,* 124 U. S. 465, 482; *Nashville &c. Ry. Co.* v. *Alabama,* 128 U. S. 96.

The effect, if any, of the statute upon interstate commerce is incidental only, and, since the statute has a real relation to the suitable protection of the people of the State, it is not invalid even though it may incidentally affect interstate commerce. *Smith* v. *Alabama,* 124 U. S. 465; *Ry. Co.* v. *Alabama,* 128 U. S. 96; *Plumley* v. *Massachusetts,* 155 U. S. 461; *Hennington* v. *Georgia,* 163 U. S. 299; *N. Y., N. H. & H. Ry. Co.* v. *New York,* 165 U. S. 628; *C., M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133; *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613; *Patapsco Guana Co.* v. *North Carolina,* 171 U. S. 345; *Reid* v. *Colorado,* 187 U. S. 137; *Pennsylvania Ry. Co.* v. *Hughes,* 191 U. S. 477; *Crossman* v. *Lurmann,* 192 U. S. 189; *McLean* v. *Denver & R. G. Ry. Co.,* 203 U. S. 38, 50; *Asbell* v. *Kansas,* 209 U. S. 251, 254–256; *C., R. I. & P. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Savage* v. *Jones,* 225 U. S. 525.

The effect of the statute being well calculated to secure competent train operatives, and thus to prevent delays and disasters to persons and property in transit in interstate commerce, it works as an aid to such commerce in so far as it affects the same at all. *Southern Ry. Co.* v. *United States,* 222 U. S. 20, 27; *Mobile County* v. *Kimball*

*County,* 102 U. S. 691; *N. Y., N. H. & H. Ry. Co.* v. *New York,* 165 U. S. 628.

MR. JUSTICE LAMAR delivered the opinion of the court.

W. W. Smith, the plaintiff in error, a man 47 years of age, had spent 21 years in the railroad business. He had never been a brakeman or a conductor, but for six years he served as fireman, for three years ran as extra engineer on a freight train, for eight years was engineer on a mixed train, hauling freight and passengers, and for four years had been engineer on a passenger train of the Texas & Gulf Railway. On July 22, 1910, he acted as conductor of a freight train running between two Texas towns on that road. There is no claim in the brief for the State that he was not competent to perform the duties of that position. On the contrary it affirmatively and without contradiction appeared that the plaintiff in error, like other locomotive engineers, was familiar with the duties of that position and was competent to discharge them with skill and efficiency. He was, however, found guilty of the offense of violating the Texas statute which makes it unlawful for any person to act [1] as conductor of a freight train without having

---

[1] SEC. 2. If any person shall act or engage to act as a conductor on a railroad train in this State without having for two (2) years prior thereto served or worked in the capacity of a brakeman or conductor on a freight train on a line of railroad, he shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars, and each day he so engages shall constitute a separate offense.

SEC. 3. If any person shall knowingly engage, promote, require, persuade, prevail upon or cause any person to do any act in violation of the provisions of the two preceding sections of this act, he shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars, and each day he so engages shall constitute a separate offense. (Act of March 11, 1909, c. 46, General Laws of Texas 1909, p. 92.)

previously served for two years as conductor or brakeman on such trains. On that verdict he was sentenced to pay a fine and the judgment having been affirmed the case is here on a record in which he contends that the statute under which he was convicted violated the provisions of the Fourteenth Amendment.

1. Life, liberty, property and the equal protection of the law, grouped together in the Constitution, are so related that the deprivation of any one of those separate and independent rights may lessen or extinguish the value of the other three. In so far as a man is deprived of the right to labor his liberty is restricted, his capacity to earn wages and acquire property is lessened, and he is denied the protection which the law affords those who are p ·- mitted to work. Liberty means more than freedom from servitude, and the constitutional guarantee is an assurance that the citizen shall be protected in the right to use his powers of mind and body in any lawful calling.

If the service is public the State may prescribe qualifications and require an examination to test the fitness of any person to engage in or remain in the public calling. *Ex parte Lockwood*, 154 U. S. 116; *Hawker* v. *New York*, 170 U. S. 189; *Watson* v. *Maryland*, 218 U. S. 173. The private employer may likewise fix standards and tests, but, if his business is one in which the public health or safety is concerned, the State may legislate so as to exclude from work in such private calling those whose incompetence might cause injury to the public. But as the public interest is the basis of such legislation, the tests and prohibition should be enacted with reference to that object and so as not unduly to "interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." *Lawton* v. *Steel*, 152 U. S. 133, 137.

A discussion of legislation of this nature is found in *Nashville &c. Ry.* v. *Alabama*, 128 U. S. 96, 98, where this court sustained the validity of a statute which required

all locomotive engineers to submit to an examination for color-blindness and then provided that those unable to distinguish signals should not act as engineers on railroad trains. That statute did not prevent any competent person from being employed, but operated merely to exclude those who, on examination were found to be physically unfit for the discharge of a duty where defective eyesight was almost certain to cause loss of life or limb. Another case cited by the plaintiff in error is that of *Dent* v. *West Virginia*, 129 U. S. 114. The act there under review provided that no one except licensed physicians should be allowed to practice medicine, and declared that licenses should be issued by the State Board of Health only to those (1) who were graduates of a reputable medical college; (2) to those who had practiced medicine continuously for ten years; or (3) to those who after examination were found qualified to practice. Ten years' experience was accepted as proof of fitness, but such experience was not made the sole test, since the privilege of practicing was attainable by all others who, by producing a diploma or by standing an examination, could show that they were qualified for the performance of the duties of the profession. In answer to the contention that the act was void because it deprived the citizen of the liberty to contract and the right to labor the court said no objection could be raised to the statutory requirements "because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation" (p. 122).

The necessity of avoiding the fixing of arbitrary tests by which competent persons would be excluded from lawful employment is also recognized in *Smith* v. *Alabama*, 124 U. S. 465, 480. There the act provided that all engineers should secure a license, and in sustaining the

validity of the statute the court pointed out that the law "requires that every locomotive engineer shall have a license, but it does not limit the number of persons who may be licensed nor prescribe any arbitrary conditions to the grant." This and the other cases establish, beyond controversy, that in the exercise of the police power the State may prescribe tests and require a license from those who wish to engage in or remain in a private calling affecting the public safety. The liberty of contract is, of course, not unlimited; but there is no reason or authority for the proposition that conditions may be imposed by statute which will admit some who are competent and arbitrarily exclude others who are equally competent to labor on terms mutually satisfactory to employer and employé. None of the cases sustains the proposition that, under the power to secure the public safety, a privileged class can be created and be then given a monopoly of the right to work in a special or favored position. Such a statute would shut the door, without a hearing, upon many persons and classes of persons who were competent to serve and would deprive them of the liberty to work in a calling they were qualified to fill with safety to the public and benefit to themselves.

2. The statute here under consideration permits those who had been freight conductors for two years before the law was passed, and those who for two years have been freight conductors in other States, to act in the same capacity in the State of Texas. But barring these exceptional cases, the act permits brakemen on freight trains to be promoted to the position of conductor on a freight train, but excludes all other citizens of the United States from the right to engage in such service. The statute does not require the brakeman to prove his fitness, though it does prevent all others from showing that they are competent. The act prescribes no other qualification, for appointment as conductor, than that for two years the

applicant should have been a brakeman on a freight train, but affords no opportunity to any others to prove their fitness. It thus absolutely excludes the whole body of the public, including many railroad men, from the right to secure employment as conductor on a freight train.

For it is to be noted that under this statute, not only the general public, but also four classes of railroad men, familiar with the movement and operation of trains and having the same kind of experience as a brakeman, are given no chance to show their competency but are arbitrarily denied the right to act as conductors. The statute excludes firemen and engineers of all trains and all brakemen and conductors of passenger trains. But no reason is suggested why a brakeman on a passenger train should be denied the right to serve in a position that the brakeman on a freight train is permitted to fill. Both have the same class of work to do, both acquire the same familiarity with rules, signals and methods of moving and distributing cars, and if the training of one qualifies him to serve as conductor the like training of the other should not exclude him from the right to earn his living in the same occupation.

It is argued in the brief for the State that in practice, brakemen on freight trains are generally promoted to the position of freight conductors and then to the position of conductors on passenger trains. And yet, under this act even passenger conductors, of the greatest experience and highest capacity, would be punished if they acted as freight conductors without having previously been brakemen.

The statute not only prevents experienced and competent men in the passenger service from acting as freight conductors, but it excludes the engineer on a freight train,—even though, under the rules of all railroads, the freight engineer now acts as conductor in the event the regular conductor is disabled en route. This general cus-

tom is a practical recognition of their qualification and is founded on the fact that the engineer, by virtue of his position, is familiar with the rules and signals relating to the train's movement and peculiarly qualified for the performance of the duties of conductor. If we cannot take judicial knowledge of these facts the record contains affirmative proof on the subject. For, according to the testimony [1] of the State's witness "acting as engineer on

[1] I understand the railroad business and know that a locomotive engineer learns as much about how a freight train should be operated by a conductor as a brakeman or conductor. Acting as engineer on a freight train will better acquaint one with a knowledge of how to operate a freight train than acting as brakeman. Under the rules of all railroads, and of The Texas & Gulf Railway Company, the engineer is held equally responsible with the conductor for the safe operation of the train. All orders are given to the engineer as well as to the conductor. Every order sent to a conductor on a train is made in duplicate and one copy of it is given to the conductor and the other to the engineer. It is a rule with railway companies that if anything should happen to disable the conductor or in any way prevent his proceeding with his train, the engineer is to immediately take charge of the train and handle it into the terminal. The engineer is constantly with the train and knows all of the signals, knows how the couplings are made, knows how the cars are switched and distributed, and knows how they are taken into the train and transported from one place to another. An engineer is so constantly associated with all the work of a conductor on a freight train that he should know as much about how a freight train should be operated by a conductor as the conductor himself. All actions of the conductor that pertain to the safe operation of the train are being carried on in his presence and within his observation all the time. The matter of handling the way bills and ascertaining the destinations of the cars in his train is easy and plain, and it does not take a person that has had experience as a conductor to understand that part of his service. The way bills are plainly written and the destinations plainly given, and booking the way bills and delivering them with the cars is clerical, and can be done by any one that can read and write and who has ordinary sense. Every act that is to be done by the conductor toward the safe handling of the train also has to be done by the engineer, and all of the conductor's acts with reference to this are in the view and observation of the engineer.

a freight train will better acquaint one with a knowledge of how to operate a freight train than acting as brakeman." And yet, though at least equally competent, the engineer is denied the right to serve as conductor and the exclusive right of appointment and promotion to· that position is conferred upon brakemen.

3. So that the case distinctly raises the question as to whether a statute, in permitting certain competent men to serve, can lay down a test which absolutely prohibits other competent men from entering the same private employment. ·It would seem that to ask the question is to answer it—and the answer in no way denies the right of the State to require examinations to test the fitness and capacity of brakemen, firemen, engineers and conductors to enter upon a service fraught with so much of risk to themselves and to the public. But all men are entitled to the equal protection of the law in their right to work for the support of themselves and families. A statute which permits the brakeman to act—because he is presumptively competent—and prohibits the employment of engineers and all others who can affirmatively prove that they are likewise competent, is not confined to securing the public safety but denies to many the liberty of contract granted to brakemen and operates to establish rules of promotion in a private employment.

If brakemen only are allowed the right of appointment to the position of conductors, then a privilege is given to them which is denied all other citizens of the United States. If the statute can fix the class from which conductors on freight trains shall be taken, another statute could limit the class from which brakemen and conductors on passenger trains could be selected, and so; progressively, the whole matter, as to who could enter the railroad service and who could go from one position to another, would be regulated by statute. In the nature of the case, promotion is a matter of private business management, and

should be left to the carrier company, which, bound to serve the public, is held to the exercise of diligence in selecting competent men, and responsible in law for the acts of those who fill any of these positions.

4. There was evidence that Smith safely and properly operated the train which had in it cars containing freight destined for points in Texas, Missouri, Oklahoma and Kansas. But in view of what has been said it is not necessary to consider whether the plaintiff, as engineer, was in a position to raise the point that under the decision in *Adams Express Co.* v. *City of New York*, 232 U. S. 14, the statute interfered with interstate commerce.

*The judgment is reversed and the case remanded to the Court of Criminal Appeals of the State of Texas for further proceedings not inconsistent with this opinion.*

Mr. Justice Holmes dissents.