## Licensing for Practice of Beauty Culture

ARNOLD, Deputy Attorney General, December 10, 1934.—The Act of May 3, 1933, P. L. 242, established a system of examination and licensing or "registration" of practitioners and teachers of beauty culture as therein defined, and of managers of beauty shops. Provision is made for the licensing or "registration" of certain classes of persons without examination. All other applicants are required to be examined. As a prerequisite to examination, with certain exceptions not important here, the applicant must have either served an apprenticeship in a beauty shop or completed certain work in a school of beauty culture.

You have asked us to construe the provisions of the act concerning the examination of graduates of beauty schools, and you inquire particularly whether graduates of schools located outside Pennsylvania may be admitted to the examinations.

The portions of the act which are pertinent to your inquiry are the following:

"Section 2. Practice of Beauty Culture without Registration Prohibited.— It shall be unlawful for any person to practice or teach beauty culture, or manage a beauty shop, or to use or maintain any place for the practice or teaching of beauty culture, for compensation, unless he or she shall have first obtained from the department a certificate of registration as provided in this act. Nothing contained in this act, however, shall apply to or affect any person who is now actually engaged in any such occupation, except as hereinafter provided.

"Section 4. Eligibility Requirements for Examination.—No person shall be permitted by the department to take an examination to receive a certificate as an operator unless such person shall be at least sixteen years of age and has been registered as a student and has had training, as hereinafter provided in this act, in a beauty school duly registered by the department, or unless such person shall have been registered and served as an apprentice at least two years as hereinafter provided in this act: . . . No person shall be permitted to take an examination for a certificate to teach beauty culture or act as manager of a beauty shop unless such person shall be at least eighteen years of age, and has had at least eighteen months' experience as an operator in a beauty shop or has had training in a duly registered school of beauty culture of fifteen hundred hours inclusive of the studies necessary to become an operator. . . .

"Section 6. Requirements of a School of Beauty Culture.—No school of

beauty culture shall be granted a certificate of registration unless it shall attach to its staff, as a consultant, a person licensed by this Commonwealth to practice medicine, and employ and maintain a sufficient number of competent teachers, registered as such, and shall possess apparatus and equipment sufficient for the proper and full teaching of all subjects of its curriculum, . . ."

Our problem arises out of the above provision of section 4 which prescribes as a prerequisite for the examination a course of training "in a beauty school registered by the department". The answer, so far as the act itself is concerned, must depend on the proper construction of the term "registered" as used in that phrase. Does it mean registered simply for purposes of recognition or being accredited, or does it mean registered in the technical sense of "licensed to operate"?

If the former meaning were correct, your department could no doubt under the act itself recognize, accredit, or register a school outside the State and admit to your examinations persons who had received in such schools the training required by our act. But if we must adopt the second interpretation of the meaning of "registered" we must look farther for our answer.

In practically every other part of the act in question, the terms "registered" and "registration" are clearly used in the sense of licensing. Section 2 makes it unlawful for any person to practice or teach beauty culture or to maintain any place for the practice or teaching of beauty culture without a certificate of "registration" issued by your department. The provisions of section 6 concerning registration of schools were obviously designed to prescribe the conditions under which a school may operate in Pennsylvania. There is nowhere a hint of any intention to provide for any other kind of registration of a school.

Under these circumstances, we feel compelled to say that the language of section 4 means that an applicant who desires to take an examination on the basis of training in a beauty school must show that she has completed the work specified in section 6 in a school "registered" or licensed for operation by your department.

It is elementary that a law of this State providing for licensing of schools for operation can have no effect outside the State. Pennsylvania cannot license the operation of schools in other States. Therefore, the net result of the statutory language is to prohibit admission to an examination on the basis of prior beauty school training of any person who has not done the preparatory work in a Pennsylvania school.

However, we may not end our inquiry here. The act, as we are thus compelled to read it, imposes a most unusual restriction on the right of persons to engage in the business of creating or enhancing beauty. Therefore, we must test it in the light of constitutional guaranties of personal rights.

The fourteenth amendment to the Federal Constitution forbids the States to "make or enforce any law which shall abridge the privileges or immunities of citizens of the United States" or to "deprive any person of life, liberty, or property, without due process of law" or to "deny to any person within its jurisdiction the equal protection of the laws."

It is well settled that a State, without violating the constitutional provisions just quoted, may prescribe that only persons who possess reasonably necessary qualifications of learning and skill may carry on occupations or professions which affect the public: Graves v. Minnesota, 272 U. S. 425 (1926); Smith v. State of Texas, 233 U. S. 630 (1914); Dent v. West Virginia, 129 U. S. 114 (1889); Norwood et al. v. Ward, State Attorney General, et al. 46 F. (2d) 312 (1930); Marx et al. v. Maybury, Director of Licenses of Washington, et al.,

36 F. (2d) 397 (1929). However, the requirements and classifications set up by such acts must be reasonable and bear a reasonable relation to the public interest which the act is intended to serve: Smith v. State of Texas, supra; Norwood et al. v. Ward, State Attorney General, et al., supra.

In Smith v. State of Texas, supra, the Supreme Court of the United States held unconstitutional a State act which would have made it illegal for any person to act as conductor of a freight train who had not previously been a brakeman on a freight train for a prescribed period. The court said (pp. 636, 638, 641):

"1. Life, liberty, property and the equal protection of the law, grouped together in the Constitution, are so related that the deprivation of any one of those separate and independent rights may lessen or extinguish the value of the other three. In so far as a man is deprived of the right to labor, his liberty is restricted, his capacity to earn wages and acquire property is lessened, and he is denied the protection which the law affords those who are permitted to work. Liberty means more than freedom from servitude, and the constitutional guarantee is an assurance that the citizen shall be protected in the right to use his powers of mind and body in any lawful calling.

". . . This and the other cases establish, beyond controversy, that in the exercise of the police power the State may prescribe tests and require a license from those who wish to engage in or remain in a private calling affecting the public safety. The liberty of contract is, of course, not unlimited; but there is no reason or authority for the proposition that conditions may be imposed by statute which will admit some who are competent and arbitrarily exclude others who are equally competent to labor on terms mutually satisfactory to employer and employe. None of the cases sustains the proposition that, under the power to secure the public safety, a privileged class can be created and be then given a monopoly of the right to work in a special or favored position. Such a statute would shut the door, without a hearing, upon many persons and classes of persons who were competent to serve and would deprive them of the liberty to work in a calling they were qualified to fill with safety to the public and benefit to themselves. . . .

"3. So that the case distinctly raises the question as to whether a statute, in permitting certain competent men to serve, can lay down a test which absolutely prohibits other competent men from entering the same private employment. It would seem that to ask the question is to answer it—and the answer in no way denies the right of the State to require examinations to test the fitness and capacity of brakemen, firemen, engineers and conductors to enter upon a service fraught with so much of risk to themselves and to the public. But all men are entitled to the equal protection of the law in their right to work for the support of themselves and families. A statute which permits the brakeman to act—because he is presumptively competent—and prohibits the employment of engineers and all others who can affirmatively prove that they are likewise competent, is not confined to securing the public safety but denies to many the liberty of contract granted to brakemen and operates to establish rules of promotion in a private employment."

The effect of the Pennsylvania act which we are now considering is not unlike the statute considered and held invalid in Smith v. State of Texas. A person may be a graduate of a school of beauty culture of another State. The course of training in that school may comply with all the requirements of our act. And yet, simply because the school is located outside of Pennsylvania, he may not even take an examination to prove his fitness to become a registered operator in this State.

In our opinion, such a result cannot be sustained. There is no possible relation between the qualifications of an applicant and the location of the school which he has attended. The provision which brings about this result is unreasonable and discriminatory, and therefore violates rights guaranteed by the constitutional provisions to which we have referred.

Therefore, we advise you that as used in the Act of May 3, 1933, P. L. 242, the term "registered" as applied to schools of beauty culture is equivalent to "licensed for operation", and the provision of section 4 of the act which limits those who may take examinations to graduates of schools "registered" by your department is unconstitutional and void. Consequently you may, and in fact must, admit to examinations under this act, any person who has received in a school of beauty culture the courses of study prescribed by the act (section 6) without regard to the fact that the school is not "registered" by your department.

Of course, in passing upon the credentials of any applicant, it will be permissible for you to require that he satisfy you that the school from which he comes is a bona fide school of beauty culture, but you may not require that it be registered or that it employ a Pennsylvania physician or Pennsylvania registered instructors. From C. P. Addams, Harrisburg, Pa.