**CAPITOL HILL RESTORATION SOCIETY et al., Petitioners,**

v.

**ZONING COMMISSION of the District of Columbia, Respondent,**

**Graham Associates, Inc. and Committee of 100 on the Federal City, Intervenors.**

No. 5929.

District of Columbia Court of Appeals.

Argued Nov. 23, 1971.

Decided Feb. 7, 1972.

Leonard N. Bebchick, Washington, D. C., with whom Alan S. Davis, Washington, D. C., was on the brief, for petitioners.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin, Washington, D. C., was on the brief, for Graham Associates, Inc., intervenor.

Franz M. Oppenheimer, Washington, D. C., and Robert E. Lieblich, Alexandria, Va., filed an amicus curiae brief for Committee of 100 on the Federal City, intervenor. John S. Hoff, Washington, D. C., also entered an appearance for intervenor.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

FICKLING, Associate Judge:

This is a petition for review of an order of the Zoning Commission of the District of Columbia (hereinafter Commission) granting "preliminary approval" of a zoning application for the erection of a ten-story office building in the Capitol Hill section of the District of Columbia. The principal question raised by petitioners is whether the District of Columbia Administrative Procedure Act (APA) [1] applies to this type of proceeding before the Commission. We hold that the APA does apply.

On August 18, 1970, Graham Associates, Inc., filed an application with the Commission for preliminary approval for a Planned Unit Development pursuant to Article 75 of the Zoning Regulations. A public hearing on the application was held, as required by § 7501.37 of the Zoning Regulations, on March 3, 1971. It is undisputed that this hearing did not comply with the standards set forth in D.C.Code 1967, § 1–1509 (Supp. IV, 1971).[2] Subsequent to this hearing counsel for petitioners addressed a letter to the Commission requesting that each Commissioner place in the record an affidavit stating whether he, at any time, had been the recipient of any *ex parte* communications relating to the merits of the application. The Commission took no action on this serious question. In July 1971 petitioners requested a reconsideration of the order granting the application, based on allegations of misrepresentations by the applicants. The Commission denied the petition. This petition for review followed.

The government argues that the APA does not apply to this type of zoning proceeding, and that this court is without jurisdiction to review the Commission's order because the proceeding was "legislative" in nature and was not a "contested case" as defined by the APA. We do not agree.

▇ We have carefully reviewed the legislative history of the APA and find the conclusion that the Act was intended to apply to the Commission inescapable. The legislative reports of Congress [3] and the testimony of one of the drafters [4] repeatedly name the Commission as one of the agencies most in need of uniform minimum standards of administrative due process. In addition, the District of Columbia Administrative Practice Manual prepared by the Administrative Law Section of the District

---

1. D.C.Code 1967, § 1–1501 et seq. (Supp. IV, 1971).

2. *E. g.*, cross-examination; disclosure of *ex parte* communications, if any; and the entry of findings of fact and conclusions of law.

3. *See* S.Rep. No. 1581, 90th Cong., 2d Sess. (1968), and H.R.Rep. No. 202, 90th Cong., 1st Sess. (1967).

4. Hearings on S. 1379 and H.R. 7417 Before the Subcomm. on the Judiciary of the Senate Comm. on the District of Columbia, 90th Cong., 2d Sess. 76 (1968) (statement of Alfred L. Scanlan).

of Columbia Bar Association, the principal drafters of the APA, states:

> Under the [APA] . . . once a public hearing has been granted the Zoning Commission will be required to meet certain due process requirements, such as notice. . . . [*Id.* at 117.]

This evidences the clear opinion of the drafters that the APA was intended to apply to the Commission. This conclusion is confirmed by D.C.Code 1967, § 11–722 (Supp. IV, 1971), which provides in relevant part:

> The District of Columbia Court of Appeals has jurisdiction . . . to review orders and decisions of . . . the Zoning Commission of the District of Columbia . . . in accordance with the [APA] . . . .

In view of the fact that the APA limits judicial review to "an order or decision of . . . an agency in *a contested case*"[5] (emphasis added), Section 11–722 would be meaningless if, as the government contends, proceedings before the Commission are never contested cases. Reason and logic dictate that we reject the government's contention.

> It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result. (Footnote omitted.) [2 J. Sutherland, Statutes and Statutory Construction § 4508.1 (3d ed. Supp. 1971).]

Therefore, we hold that the APA does apply to Commission proceedings.

The APA makes a basic distinction between functions performed by agencies, *i. e.*, adjudication (a "contested case") and

rule making. This distinction is crucial to the delineation of private rights.

> [I]t is only with respect to the administrative proceedings which are included within the definition [of "contested case"] that the parties can insist, as a matter of statutory right, on observance of the procedural safeguards specified. . . . These procedural safeguards . . . are vital not only in protecting the private rights of respondents, but also in preserving the public interest that administrative determinations shall reflect fully informed decisions made on an adequate record. [1 F. Cooper, State Administrative Law 124 (1965).]

In the instant case, the Commission argues that zoning is a legislative function. "Consequently, the hearing required in zoning cases is legislative or quasi-legislative in nature"[6] and is therefore not a contested case.

Thus, we must determine whether the particular proceeding in the instant case was a "contested case" within the meaning of the APA. A "contested case" is defined in D.C.Code 1967, § 1–1502(8) (Supp. IV, 1971), as:

> [A] proceeding before the Commissioner, the Council, or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this Chapter), or by constitutional right, to be determined after a hearing before the Commissioner or the Council or before an agency. . . .

The following statement appears in the House Report:

> The definition of "contested case" has been drafted so as to exclude administrative functions traditionally nonsusceptible to application of the process of adjudication, such as inspections, tests, elections, etc., and where generally no hear-

---

5. D.C.Code 1967, § 1–1510 (Supp. IV, 1971). The Commission is undoubtedly an "agency" under the APA. *See* D.C.

Code 1967, §§ 1–1502(4), (5) (Supp. IV, 1971).

6. Brief for Respondent at 3.

ing is expressly or implicitly required by any other law. [H.R.Rep.No. 202, *supra* note 3, at 5. *See also* S.Rep.No. 1581, *supra* note 3, at 11.]

The Reports of both Houses of Congress also state that the APA was based on the Revised Model State Administrative Procedure Act of 1961 (hereinafter Model Act),[7] and that the Model Act was revised by Congress "so as to realistically embrace the functions of the District, which operates sometimes as a State, sometimes as a city, sometimes as both." S.Rep.No.1581, *supra* note 3, at 2. *See also* H.R.Rep.No.202, *supra* note 3, at 4. These Congressional revisions did not substantially change the definition of "contested case" from the definition found in the Model Act.[8] Therefore, we turn to a consideration of the intentions of the drafters of the Model Act.

A review of the history of the Model Act reveals that the drafters intended principles similar to those embodied in the Federal Administrative Procedure Act (Federal APA) [9] to govern the Model Act. Of particular interest here is the fact that the drafters of the Model Act intended "contested case" to be synonymous with "adjudication" [10] in the Federal APA, except for one important distinction:

> The term "contested case" is used in the Model Act, instead of the word "adjudication" as found in the Federal Act, to avoid the possible confusion in terminology that might result from the fact that ratemaking under the Federal Act is classified as "rule making" with special procedures applicable to it, whereas under the Model Act it is desired to apply the contested case procedures to rate-

making. [National Conference of Commissioners on Uniform State Laws, Handbook 207 (1961).]

■■■ We have no doubt that the Commission is a quasi-legislative body and that the actual acts of zoning or rezoning are quasi-legislative. Shenk v. Zoning Commission, 142 U.S.App.D.C. 267, 440 F.2d 295 (1971); Diedrich v. Zoning Commission, 129 U.S.App.D.C. 265, 393 F.2d 666 (1968); American University v. Prentiss, 113 F. Supp. 389, 393 (D.D.C.1953), aff'd 94 U.S. App.D.C. 204, 214 F.2d 282 (1954). However, our inquiry does not stop at that point. We must ask whether the hearing, which under the statute must precede any amendment to existing zoning regulations,[11] was primarily adjudicatory or legislative.[12]

> It is elementary that the action of an administrative tribunal is adjudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect. . . . [Philadelphia Co. v. SEC, 84 U.S.App.D.C. 73, 81, 175 F.2d 808, 816 (1948), vacated as moot, 337 U.S. 901, 69 S.Ct. 1047, 93 L.Ed. 1715 (1949).]

In Jones v. District of Columbia, 116 U.S.App.D.C. 301, 303–304, 323 F.2d 306, 308–309 (1963), rule making was defined as follows:

> A legislative hearing relates to "the making of a rule for the future" [citing Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226 [29 S.Ct. 67, 53 L.Ed. 150] (1908)]. As distinguished from a judicial inquiry, it is a non-adversary proceeding which seeks to devise broad pol-

---

7. National Conference of Commissioners on Uniform State Laws, Handbook 206–23 (1961).

8. Section 1(2) of the Model Act defines "contested case" as "a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing."

9. 5 U.S.C. § 500 et seq. (1970).

10. " '[A]djudication' means agency process for the formulation of an order." 5 U.S.C. § 551(7) (1970).

11. D.C.Code 1967, § 5–415. *See also* Zoning Regulations Art. 75, § 7501.37 and Art. 91, § 9101.42.

12. *See* B. Burrus, Administrative Law and Local Government 16 (1963).

icy applicable to the public generally, or a substantial segment thereof, rather than to individual parties. . . . Rather the quasi-legislative inquiry tends to consult broad relevant data available from surveys, studies and published experience. . . .

Applying these standards to the instant case we find that the proceeding before the Commission was primarily concerned with the immediate "legal rights, duties, or privileges of specific parties," rather than with general policy of future applicability. A review of Article 75 of the Zoning Regulations reveals that before the Commission can approve a preliminary application for a Planned Unit Development (hereinafter PUD), it must resolve disputed fact questions of specific applicability, e. g.: Does the PUD "conflict with the development plans and policies of the District of Columbia"? Does the PUD "enhance the neighborhood"? Does the PUD "provide future occupants of planned unit developments with a living and/or working environment and amenities superior to those which can be achieved by applying the general provisions of the Zoning Regulations"? Zoning Regulations, Article 75, § 7501.1.[13] Therefore, we hold that a proceeding involving

an application for approval of a PUD is a *contested* case within the meaning of the APA, and that the procedures provided in D.C.Code 1967, § 1–1509 (Supp. IV, 1971), must be complied with. Other jurisdictions have reached the same result in similar cases. Hyson v. Montgomery County Council, 242 Md. 55, 217 A.2d 578 (1966) (rezoning by County Council); Allen v. Donovan, 239 A.2d 227 (Del.1968) (rezoning by Levy Court); Lorland Civic Association v. DiMatteo, 10 Mich.App. 129, 135–136, 157 N.W.2d 1, 5 (1968) (variance granted by Board of Zoning Appeals). *See also* Allen v. Zoning Commission, D.C. Cir., 449 F.2d 1100 n.3 (1971) (dicta).

The Commission also argues that we should adopt the distinction advocated by Professor Davis between "trial" and "argument" type hearings.[14] Specifically, we are asked to construe the phrase "after a hearing" in the definition of "contested case"[15] to mean after a "trial type" hearing. We need not reach that question in this case. Even under Professor Davis' rationale, the case at bar clearly involves disputed questions of "adjudicative" rather than "legislative" facts.[16] The facts in dispute here bear on particular parties and a particular situation rather than on general

---

13. *See also* Zoning Regulations, Article 75, § 7501.32.

7501.32 In reviewing each preliminary application for approval, the National Capital Planning Commission and the Zoning Advisory Council shall give consideration to:

a. The suitability of the site for use as a *planned unit development* or *sectional development plan* under this Section.

b. The plans for the development are consistent with the comprehensive plan for the City as a whole.

c. The appropriateness of the uses proposed for the development.

d. The appropriateness of the *height*, density, and bulk characteristics proposed for the project.

e. The appropriateness of the location of public *streets* and *alleys* that are to be opened, closed or relocated and the location and use of public and private rights-of-way and easements.

f. Any deviation from the use, *height*, area, density or bulk provisions of the

general zoning regulations will not have any adverse effect on the use of neighboring property.

14. *See* 1 K. Davis, Administrative Law § 7.01 and § 7.04 (1958).

15. D.C.Code 1967, § 1–1502(8) (Supp. IV, 1971), quoted *supra* at p. 5.

16. Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion. [1 K. Davis, Administrative Law § 7.02 at 413 (1958).]

policy. Some adjudicatory facts present here are: Would the PUD circumvent the standards of the Zoning Regulations? Was the PUD economically viable? Would the necessary rezoning constitute illegal "spot zoning"? Would the PUD have an impermissible disruptive effect on the surrounding residential area?

Since in our view the instant case does involve disputed adjudicative facts,[17] we need not decide whether other zoning proceedings, involving the resolution of only legislative facts after a hearing, come within the term "contested case."

■ Finally, the Commission, relying on the doctrine of exhaustion of administrative remedies, argues that this court is without jurisdiction to review the order granting "preliminary approval" to the PUD because that order is not the final step in the administrative process.[18] We disagree.

In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the United States Supreme Court pointed out that the doctrine of exhaustion of administrative remedies is "subject to numerous exceptions" (footnote omitted). 395 U.S. at 193, 89 S.Ct. 1657. One of these exceptions, in cases involving interlocutory appeals from agency action, was recently stated as follows:

> [T]he courts appear to have formulated the general rule that a party may bypass established avenues for review within the agency only . . . where the agency has very clearly violated an important constitutional or statutory right. Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962). See also Oestereich v. Selective Service Bd., 393 U.S.

233 [89 S.Ct. 414, 21 L.Ed.2d 402] (1960); Leedom v. Kyne, 358 U.S. 184 [79 S.Ct. 180, 3 L.Ed.2d 210] (1958). [Sterling Drug, Inc. v. FTC, D.C.Cir., 450 F.2d 698, 710 (1971).]

In the case at bar the Commission has "very clearly violated" the petitioners' rights under the APA. The defects in the original hearing could not be cured by later proceedings or administrative appeals. Therefore, we think we are justified in taking jurisdiction despite the failure to exhaust administrative remedies.

We direct the Commission to amend its published procedures to conform to the standards set forth in the APA.

The order of the Commission is vacated and this case is remanded to the Commission for further proceedings not inconsistent with this opinion.

So ordered.

---

17. The Commission's reliance on Scarlett v. Town Council, 463 P.2d 26 (Wyo. 1969), is misplaced. That case involved an annexation of land by a town council after an argument type hearing. The court held that since no property was taken from the residents of the annexed land and no one has a vested right to be either included or excluded from a local governmental unit, the determination did not "resolve legal rights, duties, or privileges so as to make applicable the Wyo-

ming Administrative Procedure Act." 463 P.2d at 30. The holding of the court was premised on the belief that the issue was one of *legislative* rather than *adjudicative* fact.

18. Under D.C.Code 1967, § 1–1510 (Supp. IV, 1971), judicial review is limited to an "order" of an agency in a contested case. "Order" is defined as "the whole or any part of the final disposition." D.C.Code 1967, § 1–1502(11) (Supp. IV, 1971).