Paul DEBRUHL, Petitioner,

v.

DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD, Respondent.

No. 10847.

District of Columbia Court of Appeals.

Argued June 23, 1977.

Decided March 9, 1978.

Robert Plotkin, Washington, D. C., for petitioner. Richard Hand, Washington, D. C., filed brief for petitioner.

Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, and HARRIS and MACK, Associate Judges.

NEWMAN, Chief Judge:

Denied a hacker's license by the Department of Motor Vehicles because of a felony conviction and subsequent parole status, petitioner seeks review challenging the constitutionality of the regulations establishing the disqualification. Respondent challenges our jurisdiction to review. Concluding that we do have jurisdiction, we reach petitioner's constitutional contentions; reject them; and affirm.

Convicted of armed robbery, petitioner was sentenced to a term of confinement. In early 1975, he was released on parole. In the fall of that year, he applied for a hacker's license. This application was denied based on Sections 10.201 and 10.202 of the District of Columbia Motor Vehicle Regulations solely because of his particular parole status.[1] Petitioner sought review of this denial by respondent, the appropriate administrative appeals board. Not challenging the fact of his parole status but rather its constitutionally permissible relevance to the issuance of a hacker's license, petitioner waived personal appearance before that tribunal and submitted his case on the written record.[2] Relief was denied by respondent based solely on his parole status. Petitioner timely filed this petition for review.

By motion to dismiss, respondent challenges the jurisdiction of this court to entertain petitioner's constitutional issues.[3] As did the respondent in *Berger v. Board of Psychologist Examiners for District of Columbia*, D.C.App., 313 A.2d 602 (1973), (hereafter *Berger I*), respondent here contends that this is not a "contested case" within the meaning of the District of Co-

---

1. The pertinent provisions of the regulations are as follows:
 *Section 10.201*—WHAT PERSONS SHALL NOT BE LICENSED. The Department shall not issue any license hereunder—
 \* \* \* \* \* \*
 (11) To any person who, under the judgment of the Director, is not of good moral character, under the standards laid down in Section 10.202.
 *Section 10.202*—GOOD MORAL CHARACTER: MINIMUM STANDARDS. An applicant shall not be considered of good moral character if—
 \* \* \* \* \* \*

 (c) He has, within the three years immediately preceding the filing of his application been convicted of, or during such period has served any part of a sentence for—
 (1) \* \* \* robbery \* \* \*. [32 DCRR §§ 10.201–10.202]

2. The record contained numerous letters and the like attesting to his "good moral character."

3. By order of December 29, 1976, the motions division of this court deferred this motion to the merits division to be thereafter assigned for decision.

lumbia Administrative Procedure Act, D.C. Code 1973, § 1–1501 *et seq.* (hereafter DCA-PA), since "under applicable law, the Board had no recourse other than to deny him licensure."[4] Respondent cites no authority for this proposition other than *Berger I.* Since our review under DCAPA runs only to "contested cases" as defined therein, we must first resolve this jurisdictional challenge.[5]

## I

In *Berger I*, the petitioner applied to the Board of Psychologist Examiners for a license, without examination, to practice psychology.[6] Since he lacked the qualifications established by the statute for issuance of a license without examination, his application was denied after a hearing. Conceding that he lacked the statutory qualifications, Berger sought review, by this court, contending the statute was unconstitutional as applied to him. In dealing with a jurisdictional challenge identical to the one raised here by respondent, this court stated:

> It is thus obvious that petitioner expected no relief from the Board. As far as he was concerned, the proceeding before the Board was a formality, used merely as a step to come to this court. Having gotten here by that procedure, in effect he seeks to institute an original action to have this court declare the Act invalid and unconstitutional. Does he have a right to institute such action and do we have a right to entertain it? We think not. [*Id.* at 604.]

██ Recognizing that our holding in *Berger I* was overturned by the United States Court of Appeals in *Berger v. Board of Psychologist Examiners,* 172 U.S.App.D.C. 396, 521 F.2d 1056 (1975), (hereafter *Berger II* ), respondent urges us to reject the decision in *Berger II,* and again enunciate the views we expressed in *Berger I* as the law of this jurisdiction. Noting that subsequent to our holding in *Berger I,* the judicial review provisions of the District of Columbia Practice of Psychology Act, D.C. Code 1973, § 2–492(C), were amended to divest the United States Court of Appeals of jurisdiction to review subsequent proceedings under the Act, respondent urges that under *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971), we may now simply decline to follow *Berger II.* We reject this as an overly simplistic approach toward deciding this issue for two reasons. First, since the definition of "contested case" in DCAPA, (save for an exception not here relevant), was intended to be synonymous with that of "adjudication" in the Federal Administrative Procedure Act, (hereafter Federal A.P.A.), 5 U.S.C. § 500 *et seq.* (1970), *Capitol Hill Restoration Society v. Zoning Commission,* D.C.App., 287 A.2d 101 (1972), decisions of this court construing such a provision of DCAPA, in so far as feasible, should be harmonious with those of the federal courts construing the corresponding provision of the Federal A.P.A. Secondly, as we noted in *M.A.P. v. Ryan, supra,* even where we are not bound by a holding of the United States Court of Appeals for this circuit, such holdings are "entitled to great respect." [*Id.* at 312.][7]

Our independent analysis of the issue presented leads us to hold that this court

---

**4.** Respondent's Motion to Dismiss Petition for Review for Want of Jurisdiction, filed July 20, 1976.

**5.** DCAPA defines a contested case thusly:
[T]he term "contested case" means a proceeding before . . . any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing before . . . an agency . . . . . [D.C.Code 1973, § 1–1502(8).]

**6.** Berger had filed a prior action in the United States District Court seeking to have the stat-

ute establishing the regulatory scheme of licensure declared invalid and unconstitutional. The District Court dismissed his action without prejudice on grounds of failure to show irreparable injury and failure to exhaust administrative remedies. The court subsequently withdrew the latter as a ground of decision. *See also Cheek v. Washington,* 333 F.Supp. 481 (D.D.C.1971).

**7.** Given our holding, we need not determine whether the holding in *Berger II* is technically binding on this court in this case.

properly has jurisdiction over this case and the constitutional issue raised.

 DCAPA, as does Federal A.P.A., provides for basically two types of proceedings before administrative agencies—adjudicatory proceedings ("contested case") and rulemaking proceedings. *Capitol Hill Restoration Society v. Zoning Commission, supra.* The *sine qua non* of an adjudicatory proceeding is the individual, particular and immediate nature of the action as distinguished from the general and future nature of the rulemaking process. As we said in *Citizens Association of Georgetown, Inc. v. Washington*, D.C.App., 291 A.2d 699 (1972):

> The principal manifestation of a 'contested case' is its character as a quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding. [*Id.* at 703.]

The proceedings in this case fully fit this description. The Board was required by law to determine petitioner's application for a hacker's license. As it was required to be, the decision was based on particular facts and information concerning petitioner's background and status. And clearly the decision immediately affected his interest in obtaining gainful employment.

In *Oklahoma v. United States Civil Service Commission*, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947), the Supreme Court, in a somewhat analogous situation, rejected an argument like that of our respondent. After unsuccessful challenges to the authority of the Civil Service Commission to enforce against certain state employees the political activity ban of the Hatch Act in the lower federal courts, Oklahoma obtained certiorari in the Supreme Court contending the Act was unconstitutional. The Commission challenged the authority of the federal courts to grant relief, contending that Oklahoma could not challenge the constitutionality of the Act where its standing to seek review of the Commission order came from the same Act. The Court noted that the Act gave any party aggrieved a right to federal court review of the Commission order, which order was to be affirmed if the Court determined that the order was "in accordance with law." The Court reasoned that:

> Only if the statutory basis for an order is within constitutional limits, can it be said that the resulting order is legal. To determine that question, the statutory review must include the power to determine the constitutionality of [the challenged section of the Act]. [*Id.* at 138, 67 S.Ct. at 551.]

 It has been urged that where there are no disrupted "adjudicative facts" to be determined by the Board, a petitioner should be required to first seek relief in a trial court. No persuasive reason has been advanced for this proposition. An administrative agency, as is the case with the trial court, is competent to establish a record and then grant or deny the relief prayed. The fact that the administrative agency may be without authority to invalidate the statutory or regulatory scheme under which it operates, does not mean that review of such agency decision, including resolution of the constitutional questions raised by a party, is in a tribunal other than here.[8] Thus, having concluded that we have jurisdiction to review the decision of the Board and to resolve the constitutional issues raised by petitioner, we now turn to those issues.

## II

Petitioner alleges that the requirements of due process were not satisfied because the challenged regulations: (1) precluded

---

8. We note that in *Richards v. District of Columbia Hackers' License Appeal Board*, D.C. App., 357 A.2d 439 (1976), a case challenging the constitutional validity of the same regulations on prior felony status as are here at issue, the government conceded that it was a "contested case" within the meaning of DCAPA. What happened between May 19, 1976, the date of our opinion in *Richards*, and July 20, 1976, the date of the filing of the motion to dismiss for want of jurisdiction in this case, to cause government counsel to change position does not appear of record. Nor did counsel for the government enlighten us on this point at oral argument.

inquiry into the applicant's present fitness, thereby rendering the right to a hearing barren of substance; (2) embodied an irrebuttable presumption which assumes facts which are neither necessarily nor universally true; and (3) imposed a disability based on a presumption which has not and cannot be demonstrated to bear a constitutionally required direct relationship to qualifications for a hacker's license.

 We start with the proposition that a state may not exclude a person from practicing any occupation in a manner or for reasons which contravene due process or equal protection rights. *Schware v. Board of Bar Examiners of State of New Mexico,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). However, licensing statutes, which are primarily designed to protect the public, may regulate those occupations affecting the public interest by setting appropriate standards reasonably related to competency. *Goldsmith v. Clabaugh,* 55 App. D.C. 346, 6 F.2d 94 (1925). Only those who possess the requisite qualifications are thereby entitled to a license.

Petitioner was free to show that he met the requirements for a license. Failing to do so (having served a felony sentence within the proscribed time period), his constitutional claim is that the eligibility standards bear no rational relation to a legitimate objective.

 A classification which is rationally related to the achievement of legitimate goals does not violate due process. *Richardson v. Belcher,* 404 U.S. 78, 84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). This court has already noted, albeit in dictum, in *Richards v. District of Columbia Hackers' License Appeal Board,* D.C.App., 357 A.2d 439, 441 (1976), that "there is a rational interest in protecting members of the public from using taxicabs operated by individuals who have recently demonstrated a flagrant disregard for the persons and property of others." Hackers pursue their employment without close supervision and maintain direct and personal contact with the general public, which must necessarily rely upon the District's certification of fitness. It is not unreasonable to evaluate the character of potential licensees with regard to trustworthiness and to view certain types of prior convictions of relatively recent occurrence as establishing a lack of moral integrity. As another court stated, in construing a licensing statute barring persons convicted of crimes involving moral turpitude, such provision

> at best only suggests that a person who has committed certain acts in the past would be more likely to betray the trust that this license entails than a citizen with no such past history. Such reasoning, while not infallible, has a logical basis in experience. [*Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 493–94, 309 A.2d 358, 362 (1973).]

We hold that barring persons convicted of certain enumerated offenses or serving any part of their sentences within three years of an application for licensing is rationally related to the legitimate objective of securing safe public transportation.

The irrebuttable presumption argument made by appellant is addressed in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). There, the Supreme Court determined that the legislature could validly exclude surviving wives and stepchildren who had established relationships to the deceased wage-earner less than 9 months prior to his death from obtaining social security benefits. That exclusion, like the instant one, was deemed to be a prophylactic measure which was an acceptable "response to legitimate interest in administrative economy and certainty of coverage for those who meet its terms." The Court enunciated the view that under the standards of legislative reasonableness:

> [t]he question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could ra-

tionally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. [*Id.* at 777, 95 S.Ct. at 2473.] [9]

The hacker's regulations are next alleged to deprive an entire class of persons of a fundamental interest, the right to work. Thus, they are said to be subject to the compelling governmental interest test. Petitioner has cited no cases holding that the compelling interest test applies to the "right to employment" or that convicted felons constitute a suspect classification. Instead he relies principally on *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Sugarman v. Dougall*, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973), and *Smith v. Texas*, 233 U.S. 630, 34 S.Ct. 681, 58 L.Ed. 1129 (1914). All these cases are readily distinguishable. In *Smith*, the Supreme Court struck down a requirement prohibiting railroad engineers from operating as freight train conductors without 2 years previous service as a conductor or brakeman on such train because it was arbitrary and unrelated to the state interest it was designed to serve. *Sugarman* held unconstitutional a state law barring aliens from competitive civil service positions because it swept indiscriminately and was not narrowly limited to the accomplishment of its substantial state interests. In *Griffiths*, the Supreme Court determined that a classification based on alienage was inherently suspect and, as such, subject to strict judicial scrutiny. The state's exclusion of aliens from the practice of law was held to violate equal protection because the classification was not shown to be necessary to the state's interest in maintaining high professional standards. These cases provide no basis for application of the compelling state interest test here.

As stated previously, the regulations are rationally related to the achievement of their goal. The Supreme Court has stated that a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in similar circumstances shall be tested alike. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Although, as petitioner points out, the regulations do not include all ex-offenders or those with poor driving records, etc., the classification need not be perfect or result in precise equality and rough accommodations, even though illogical, are permitted as long as the classification has a reasonable basis. *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The order of the Board is

*Affirmed.*

HARRIS, Associate Judge:

I concur in the result and in the reasoning expressed in the majority opinion, with but one exception. I respectfully disagree with the majority's belief that the provisions of the District of Columbia Administrative Procedure Act (DCAPA) establish a basic dichotomy between adjudicatory proceedings and rulemaking proceedings, and that such a dichotomy provides the basis for determining whether a particular administrative proceeding is a contested case—and hence subject to judicial review.

I recognize that such a characterization was adopted by a majority of the court in *Chevy Chase Citizens Association v. Council*, D.C.App., 327 A.2d 310 (1974) (en banc), and that such a position is now binding upon us. Nevertheless, for the reasons set forth in my dissent in *Chevy Chase, supra*, I

---

9. We note that the exclusion in this case is not of permanent duration; the disability only extends for a period of 3 years. As such, it does not conclusively bar convicted felons from obtaining a license or, as petitioner contends, disregard the possibility or hope of reformation.

continue to find fault with such an analysis of the provisions of the DCAPA. *See* 327 A.2d at 320–21. I am still of the opinion that the dichotomy the Act creates is between contested cases and noncontested cases.

While I thus express my disagreement with a small portion of the language utilized by the majority, that portion of the opinion is not central to our disposition of this case, and I do not wish to belabor the point. Accordingly, I concur, and express this limited area of disagreement in a cursory fashion.