**RHEMA CHRISTIAN CENTER, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 84–1627.

District of Columbia Court of Appeals.

Argued Nov. 18, 1985.
Decided Sept. 10, 1986.

Deidra E. Thomas and Winifred E. Cannon, with whom Shirley Williams, Melissa Johnson, and Gwendolyn Crockett, Washington, D.C., were on the brief, for petitioner.

Beverly J. Burke, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel at the time the brief was filed, and John H. Suda, Acting Corp. Counsel, Washington, D.C., at the time the brief was filed, were on the brief, for respondent.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

For a second time, the Board of Zoning Adjustment denied Rhema Christian Center's application for a special exception to operate a parochial school at its church in a residential neighborhood. Rhema contends: (1) the school is an accessory use of the church and therefore must be permitted as of right; (2) the Board's refusal to permit this accessory use violated Rhema's constitutional right to the free exercise of religion; (3) alternatively, because public schools are permitted as of right in residential neighborhoods, and because the Board has granted special exceptions for other private schools in the same neighborhood—including one next door to Rhema—the Board's denial of Rhema's application violated its constitutional right to equal protection of the laws; and (4) in any event, the Board's decision is not supported by substantial evidence. We affirm, primarily by reference to claim and issue preclusion doctrine.

## I.

In the fall of 1981, Rhema Christian Center began operating a parochial day school in its church facilities at 4915 Sargent Road, N.E., located in an R–2 residential zoning district. Rhema apparently assumed it could establish the school as of right, as an accessory use of the church. Subsequently, the Zoning Administrator informed Rhema that a certificate of occu-

pancy was required and that Rhema would have to obtain a special exception from the Board of Zoning Adjustment before a certificate could issue. Rhema stopped operating the school at its church and moved it to leased space in the Faith United Church three blocks away.

In May 1982, Rhema filed its first application for a special exception permitting use of the church for a school with 40 students and three teachers. The Board granted leave to amend the application to propose a maximum of 80 students and six teachers, including a pre-school group, and to propose use of an adjacent lot for a play area and a parking lot.

Before the public hearing, Rhema asked the Board to rule that the school was an accessory use of the church and thus permissible as of right. Rhema argued that the zoning regulations refer only to private schools, not to parochial schools, presumably because a parochial school has traditionally been considered an accessory use of a church. Relying on *City of Concord v. New Testament Baptist Church*, 118 N.H. 56, 382 A.2d 377 (1978), Rhema urged that because churches are permitted as of right in an R–2 district, the school, as an accessory use, must be permitted as of right as well. Rhema also suggested that the requirement of a special exception would infringe upon its constitutional right to the free exercise of religion. The Board referred the matter to the Corporation Counsel.

Relying on *Damascus Community Church v. Clackamus County*, 45 Or.App. 1065, 610 P.2d 273 (1980), *appeal dismissed*, 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981), and 11 D.C.M.R. 3101.4 (1982), the Corporation Counsel opined that operation of a church as of right does not authorize operation of a parochial school as of right because the zoning regulations treat church and non-public school uses differently and independently. The opinion also stated that requiring a parochial school to qualify for a special exception would not infringe upon Rhema's free exer-

cise of religion; while religious beliefs are absolutely protected, the state may regulate religious conduct. Finally, according to the Corporation Counsel, because a school is a more intensive use than a church, the District of Columbia legitimately has exercised its police powers to apply different zoning criteria to the two uses. Based on the Corporation Counsel's opinion, the Board denied Rhema's request.

After a public hearing, the Board also denied Rhema's application for a special exception. In a final order dated December 17, 1982, the Board ruled: (1) the school was objectionable to the adjoining and nearby property because of noise, number of students, and close proximity to residential property, and (2) the pre-school was not reasonably necessary to the neighborhood since it would not draw students from the neighborhood children. The final order incorporated the Board's previous ruling that the school was not an accessory use of the church. Rhema did not petition this court for review of the Board's final order.

Instead, in July 1983, Rhema again asked the Zoning Administrator for a certificate of occupancy for its school. The Zoning Administrator again replied that the proposed parochial day school for 80 students was not permitted as of right in an R–2 district. He again suggested that Rhema petition the Board for a special exception under 11 D.C.M.R. § 3101.42 (1982).

On May 22, 1984, Rhema filed a second application under 11 D.C.M.R. §§ 3101.42, 3102.5, 8207.2 (1982) (see Appendix) for a special exception permitting the church to operate a parochial day school with 80 students and six teachers (but without the previously proposed pre-school and adjacent lot uses). The application also asked the Board to rule that the parochial school was an accessory use of the church, permitted as of right under 11 D.C.M.R. §§ 3101.-32, –.5, 3102.31, –.5 (1982) (see Appendix). Rhema added in the application that, by requesting a special exception, it did "not waive its claim to operate a school in the

church as a matter of right," nor did it "waive any of its Constitutional rights relative to this matter."

In response, the Board's Executive Director, by letter of May 29, 1984, reminded Rhema that the Board had decided, in connection with the first application, that the school was not an accessory use of the church and, therefore, required Board approval. The letter instructed Rhema that, if it sought to revive the accessory use issue, it should appeal the decision of the Zoning Administrator denying a certificate of occupancy. Rhema did not do so. Moreover, in accordance with the Executive Director's letter, Rhema agreed to address only its request for a special exception under 11 D.C.M.R. §§ 3101.42, 8207.2 (1982) and did not further pursue the accessory use issue with the Board.

After a public hearing on Rhema's second application, the Board denied the requested special exception on September 5, 1984, ruling that Rhema had not met its burden of proving the proposed school would not adversely affect use of the neighboring property. The Board concluded that a school with 80 students and six teachers would be objectionable to adjoining and nearby property owners because of inherent traffic and noise generated by that number of students in close proximity to residential dwellings. The Board also concluded that the second application was "not significantly different" from the prior application, which the Board had denied 21 months earlier. The appeal followed.

## II.

■ Rhema raised both the accessory use and the free exercise issues, as well as its asserted right to a special exception for a parochial school, in the first Board proceeding. Rhema, however, has presented an equal protection issue for the first time in this second proceeding—and has done so only in this court, not before the Board. At the outset, therefore, we confront serious questions about whether some or all of Rhema's assertions of error are barred by the doctrines of claim preclusion (*res judicata*) and/or issue preclusion (direct and collateral estoppel), which are applicable to administrative, as well as judicial, proceedings. *City Wide Learning Center, Inc. v. William C. Smith & Co.*, 488 A.2d 1310, 1313 (D.C.1985) (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1193–94 (D.C. 1980); 4 K. Davis, ADMINISTRATIVE LAW TREATISE, § 21:2 (2d ed. 1983); RESTATEMENT, SECOND, JUDGMENTS § 83 (1982).

## A.

■ In determining whether preclusion doctrine is applicable in a particular case, "[t]he threshold inquiry is whether the earlier proceeding [was] the essential equivalent of a judicial proceeding." *Davis*, 412 A.2d at 1194. The Board is an adjudicatory agency; it hears and decides cases (applications and appeals) initiated by parties other than the Board itself. D.C.Code § 5–424 (1981). Moreover, our local Administrative Procedure Act, D.C.Code §§ 1–1501 to 1510 (D.C.1981), as well as the Board's own procedural regulations, 11 D.C.M.R. §§ 3300–3399 (1985), ensure the essential elements of due process in adjudication, including notice, representation, a hearing with presentation of evidence and cross-examination, and a written decision with findings of fact and conclusions of law. *Rose Lees Hardy Home and School Association v. District of Columbia Board of Zoning Adjustment*, 324 A.2d 701, 707 (D.C.1974). There is no question that these procedural requirements were met in the first proceeding. Thus, the "threshold inquiry" for preclusion is satisfied.

## B.

■ Before we apply preclusion doctrine, it will be useful to provide a conceptual framework for analyzing the particular factual and legal posture of this case. Generally speaking, once a claim has been finally adjudicated, the doctrine of claim

preclusion, or *res judicata*, prevents the same parties from relitigating the same claim, including any issue that either was or might have been raised in the first proceeding. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 485 (D.C.1981) (en banc); RESTATEMENT, SECOND, JUDGMENTS § 17 (1982). As a corrollary, the doctrine of issue preclusion, embracing the concepts of direct and collateral estoppel, prevents the same parties from relitigating an issue actually decided in a previous, final adjudication, whether on the same or a different claim. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414; · *Henderson*, 439 A.2d at 485; *Segal v. American Telephone & Telegraph Co., Inc.*, 606 F.2d 842, 845 (9th Cir.1979); RESTATEMENT, SECOND, JUDGMENTS §§ 17(3), 27.

■ Under some circumstances (not worth detailing here), exceptions to the general rule of claim preclusion or *res judicata* permit a party to relitigate all or part of a previously adjudicated claim. *Id.* §§ 20, 26. Nonetheless, in those situations the doctrine of issue preclusion stands in the way of retrying "issues actually litigated and determined in the first action." *Id.*, § 27, Comment b. Because the same claim is being litigated a second time, however, any issue preclusion is commonly designated a "direct estoppel," *id.*, as distinguished from the more common situation in which the first and second claims are different and the issue preclusion is thus called a "collateral estoppel." *Id.*

### C.

Interestingly, traditional zoning law itself incorporates the preclusion concept. As a general proposition, when a special exception or variance is denied and the applicant, after a required waiting period, resubmits the same or a substantially similar application, the applicant must demonstrate that conditions have changed, such that the reasons for the previous denial no longer apply. *Bright v. Zoning Board of Appeals*, 149 Conn. 698, 705, 183 A.2d 603,

606 (1962) (on reapplication after board denied variance, board may not "revoke its former action" without "change in conditions or new considerations materially affecting the merits"); *Marks v. Zoning Board of Review*, 98 R.I. 405, 408, 203 A.2d 761, 764 (1964) (on reapplication 18 months after board denied variance, board may not reverse decision without "substantial or material change of circumstances" between the two decisions); *see First Baptist Church of Washington v. District of Columbia Board of Zoning Adjustment*, 432 A.2d 695, 701 (D.C.1981) (opponent to reissuance of permit extending special exception must show "change of conditions ... [or] other considerations materially affecting the merits") (quoting *Spencer v. Board of Zoning Appeals*, 141 Conn. 155, 157, 104 A.2d 373, 375 (1954)); *see generally*, 3 Anderson, AMERICAN LAW OF ZONING, §§ 20.52, –.53 at 573–79 (2d ed. 1977); Annot., 52 A.L.R.3d 494, 498–502, 510–19.

■ This is simply another way of saying the applicant must show the Board that claim preclusion (*res judicata* ) does not apply by demonstrating that, because of changed circumstances, the application for the same or a substantially similar special exception or variance no longer can be characterized as the same claim. *Metropolitan Dade County Board of County Commissioners v. Rockmatt Corp.*, 231 So.2d 41, 44 (Fla.App.1970) (*res judicata* ); *Easley v. Metropolitan Board of Zoning Appeals*, 161 Ind.App. 501, 507, 317 N.E.2d 185, 190 (1974) (*res judicata* ); *May-Day Realty Corp. v. Board of Appeals*, 107 R.I. 235, 237–38, 267 A.2d 400, 401–02 (1970) ("principle of administrative finality"); 3 Anderson, §§ 20.52, –.53; 3 Rathkopf & Rathkopf, THE LAW OF ZONING AND PLANNING, §§ 48.01, –.02 (1986).

Courts and zoning adjustment boards, therefore, have applied preclusion doctrine to zoning, whether they have used preclusion language or not. Perhaps the principal reason why some courts and boards have not used such language is that, commonly, the second application for a special

exception or variance is alleged to differ in some respect from the first, and/or the passage of time is alleged to have resulted in some change in the neighborhood that arguably creates a new situation. Accordingly, an evidentiary hearing will be necessary, since summary disposition is not an option unless the second application is identical to the first and no change of circumstances is alleged. *See* 3 Anderson, § 20.-53 at 577. As a result, boards of adjustment which have to hear the evidence anyway will, as a precaution, review a second application de novo and rule on the merits, often noting as one (but only one) of the reasons for denial that the circumstances have not changed enough since denial of the first application to warrant a different result. In this way, some boards of adjustment have avoided the often difficult question whether the second application, in legal effect, is the same as the first and thus precluded by the principle of administrative finality.

For purposes of judicial review, however, a board of adjustment's failure to rule on the preclusion question can be troublesome, as we shall see in this case. For the future, therefore, the Board should keep in mind the following statement by the Supreme Court of New Hampshire (which we have corrected to reflect what the court undoubtedly meant to say in light of its analysis and the cases cited). We believe it states the proper basis for deciding whether a second application for a previously denied variance or special exception is the same claim and thus should be barred by *res judicata,* not denied after a laborious analysis of the merits:

> When a material change of circumstances affecting the merits of the application has not occurred or [and] the application is not for a use that materially differs in nature and degree from its predecessor, the board of adjustment

may not lawfully reach the merits of the petition. If it were otherwise, there would be no finality to proceedings before the board of adjustment, the integrity of the zoning plan would be threatened, and an undue burden would be placed on property owners seeking to uphold the zoning plan.[1]

*Fisher v. City of Dover,* 120 N.H. 187, 412 A.2d 1024, 1027 (1980).

### D.

In the present case, the Board found that in the first proceeding it had "denied the same applicant the same relief for the same use of the subject premises." But the Board then proceeded to address the merits by making findings on all the criteria relevant to granting a special exception under 11 D.C.M.R. §§ 3101.42, 8207.2 (1982), including the weight to be accorded the views of the Advisory Neighborhood Commission. The Board then concluded:

> [T]he applicant has not met its burden of proof. Eighty students and six teachers is objectionable to adjoining and nearby property owners because of the inherent traffic, noise and number of students in the close proximity to residential dwellings. Such conditions would affect adversely the use of neighboring property. The Board concludes that the subject application is not significantly different from the prior application, which the Board denied. Consequently, the Board reaches the same conclusion in this case.

It is not clear whether the Board is saying that (1) it must deny the application on the merits, just as it did the last time, given the evidence on traffic, noise, number of students, and proximity to dwellings, or that (2) the application is virtually the same as before, the evidence reveals no material change of conditions, and thus (as it turned out) Rhema's second application is preclud-

1. The word "or" in the first sentence should be changed to "and." If properly stated in the disjunctive, the first sentence should say:

> Unless a material change of circumstances affecting the merits of the application has

occurred or the application is for a use that materially differs in nature and degree from its predecessors, the board of adjustment may not lawfully reach the merits of the petition.

ed. Put another way, it is not clear whether the Board conceptualized the second application as a new claim, entitled to de novo consideration but denied on the merits, or as a reasserted previous claim, barred by *res judicata.*

Conceivably, the Board thought of the second application as a new claim, entitled to a merits ruling, simply because it omitted the pre-school and adjacent lot uses proposed in the first application and because circumstances concerning land use always change to some extent after a period of time passes. Or perhaps the Board simply assumed—without regard to whether the application should be characterized as a new or the same claim—that the second application was legitimately filed, and entitled to a merits ruling, because more than a year had passed since the Board had denied the first application. *See* 11 D.C. M.R. § 8204.2 (1982). Or, finally, perhaps the Board, because of its several references to Rhema's previous application, concluded after a full hearing that the second application was essentially the same claim, which was not legitimately pursued after all because it was not significantly different from the first and the conditions of the neighborhood had not changed very much.

Whatever position the Board took on whether the claim was new or the same, or on whether it was legitimately entitled to a merits ruling or not, the Board did not say. Its final order mixed preclusion and merits analysis to the point we cannot tell whether the Board intended to make rulings in the alternative or simply to combine all reasons into one conclusion supporting denial. We do know, hjowever, that the Board was aware of preclusion analysis, for its Executive Director did inform Rhema, before the hearing, that the first application precluded reassertion of Rhema's accessory use issue.

### E.

We would not hesitate, on this record, to sustain the Board if it had ruled that *res judicata* barred Rhema's second applica-tion; substantial evidence would support a ruling that the second application was not significantly different from the first and that Rhema did not prove a change of conditions in the neighborhood. Had the Board clearly done so we would affirm, without reviewing the merits, because *res judicata* would have precluded relitigation of the issues raised in the first application (accessory use, free exercise, special exception), as well as any that might have been raised (equal protection).

We cannot overlook, however, that the Board, by failing to rule in the alternative (preclusion and merits), did not necessarily follow the preclusion route. Its decision is open to an interpretation either that Rhema, as a matter of law, was entitled to relitigate the same claim, *see* 11 D.C.M.R. § 8204.2 (1982), or that, as a matter of fact, the second application was different enough from the first to warrant a merits ruling. We therefore cannot substitute our judgment for the Board's in order to sustain its ruling. *Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459–460, 87 L.Ed. 626 (1943). *Compare Silverstone v. District of Columbia Board of Zoning Adjustment,* 372 A.2d 1286, 1287–88 (D.C. 1977) (where Board's order based on clearly erroneous interpretation of regulation, court nonetheless may affirm by applying another, clearly applicable regulation to Board's findings which have adequate support in record). Accordingly, we have to provide an alternative analysis.

### III.

#### A.

We must focus, more closely, on the possibility that the Board considered Rhema's second application legitimately before it simply because more than a year had passed since denial of the first application, without regard to whether it was the same or a new claim. Regulation 11 D.C.M.R. § 8204.2 (1982) (now 11 D.C.M.R. § 3102.3 (1986)) provides:

An appellant or applicant whose appeal or application has been denied shall not institute a new appeal or application on the same facts within one (1) year from the date upon which the Board issued its order upon the previous appeal or application.

We agree that the application was lawfully filed in the sense that the one-year moratorium had expired. But that moratorium, barring reapplication on the "same facts," does not necessarily mean that an applicant is entitled to a merits ruling on the same application absent changed circumstances. Firmly established preclusion doctrine, as well as traditional zoning law which incorporates that doctrine (often without using preclusion terminology), would support a conclusion that this regulation was intended only to mean that the Board—irrespective of changed circumstances—will not entertain the same application from the same applicant with respect to the same property for at least a year from the previous denial. That interpretation would leave intact the traditional preclusion concepts applicable to evaluating the application once the one-year moratorium is over. As the Supreme Court of Rhode Island has stated with respect to a similar regulation:

It represents a legislative attempt to prevent the zoning docket from being cluttered with successive applications by applicants previously denied relief. We do not construe it as permitting an owner to ask for redetermination of idential issues every twelve months.

*Marks,* 98 R.I. at 408, 203 A.2d at 764; *accord Marshall v. Fitzgerald,* 47 Md.App. 319, 322–23, 423 A.2d 967, 969–70 (1980). Accordingly, 11 D.C.M.R. § 8204.2 (1982) does not necessarily derogate from applicable rules of preclusion when the same applicant reapplies, after a year, for essentially the same special exception.

On the other hand, we are not aware that the Board has interpreted this regulation, and from the way it ruled on Rhema's second application we cannot be sure the Board would interpret it in the way other jurisdictions have construed similar moratorium rules. *See* RESTATEMENT, SECOND, OF JUDGMENTS § 20(c) (1982) (personal judgment for defendant, although valid and final, does not bar another action by plaintiff on same claim where by statute or court rule such judgment does not operate as a bar). We are unwilling to impose our own construction of the regulation absent the benefit of the Board's own interpretation and supporting reasons. *See Wells v. District of Columbia Department of Employment Services,* 513 A.2d 235, 241–42 (D.C. 1986). We need not remand, however. *Compare Wells.* We can properly dispose of this case without pausing to decide whether the Board lawfully could construe its moratorium regulation to permit refiling of the same application, without the bar of claim preclusion (*res judicata* ).

**B.**

 We shall assume, solely for the sake of argument, that by virtue of 11 D.C.M.R. § 8204.2 (1982) Rhema was entitled to pursue its second application, whether characterized as the same claim or a new claim, and to receive a Board ruling on the merits reviewable by this court—except, of course, where issue preclusion applies. As the Board itself recognized, the accessory use issue—whether a parochial school is an accessory use of a church—is purely a question of law, unaffected by a change of residential conditions. As the Board's Executive Director informed Rhema, that issue was actually raised and resolved in the first proceeding. It thus became finally adjudicated upon Rhema's failure to petition this court for review. *See Auger v. District of Columbia Board of Appeals and Review,* 477 A.2d 196, 207 (D.C.1984). Accordingly, consideration of that issue was barred by direct or collateral estoppel (depending on whether Rhema's application was the same or a new claim). As to the merits of the requested special exception for a parochial school, we have reviewed the record, are satisfied that the

Board properly applied the zoning regulations, and conclude that substantial evidence supports the Board's denial of Rhema's second application. The Board's final decision speaks well for itself.

That leaves the two constitutional issues—free exercise and equal protection. Rhema has proceeded on the assumption that, at least with respect to its free exercise issue, the Board has subject matter jurisdiction to rule on the constitutionality of the zoning regulations. That, however, is a dubious proposition. 3 Anderson, AMERICAN LAW OF ZONING § 20.02 at 465 ("a board of adjustment is without power to pass on the constitutionality of zoning regulations") (citing *Zelvin v. Zoning Board of Appeals*, 30 Conn.Sup. 157, 162, 306 A.2d 151, 155 (1973)); *id.* § 20.09 at 475 (board of adjustment exercises delegated power which neither expressly nor impliedly includes power to review constitutionality of ordinance); *see Debruhl v. District of Columbia Hackers' License Appeal Board*, 384 A.2d 421, 425 (D.C.1978) (assumes for sake of argument that "the administrative agency may be without authority to invalidate the statutory or regulatory scheme under which it operates").

Therefore, difficult questions often are presented as to whether an aggrieved party must bring a constitutional challenge to a zoning ordinance in the trial court, or may join a constitutional issue with others properly before a board of zoning adjustment—knowing the board cannot take jurisdiction—and seek direct appellate review on the record developed at the administrative hearing. *See Debruhl*, 384 A.2d at 425–27 (on direct appeal from Hackers' License Appeal Board, court of appeals decided constitutionality of regulation disqualifying felon from obtaining hacker's license). The answer may be more practical than theoretical. Whereas the record of some administrative hearings, relevant to the regulatory issues, may suffice for the appellate court to review a constitutional question, *see id.*, other hearing records may not, absent the agency's willingness to take evidence on an issue outside the scope of its mandate.

In any event, Rhema raised the free exercise issue in its first application, and the Board took jurisdiction and ruled against Rhema. Because Rhema failed to petition this court for review, there was a final order precluding relitigation of the free exercise issue in the second proceeding, as a matter of direct or collateral estoppel. Having invoked the power of the Board to rule on a constitutional issue, Rhema would be estopped to deny the Board's power to rule on it, *see Callanan Road Improvement Co. v. United States*, 345 U.S. 507, 513, 73 S.Ct. 803, 806, 97 L.Ed. 1206 (1953); *United Fuel Gas Co. v. Railroad Commission of Kentucky*, 278 U.S. 300, 307–08, 49 S.Ct. 150, 151–52, 73 L.Ed. 390 (1929), even if the Board lacked subject matter jurisdiction. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 377–78, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 137–38, 83 L.Ed. 104 (1938); *Auger*, 477 A.2d at 207; *Stewart Securities Corp. v. Guaranty Trust Co.*, 597 F.2d 240 (10th Cir.1979); *McCulloch Interstate Gas Corp. v. Federal Power Commission*, 536 F.2d 910, 913 (10th Cir.1976).

The equal protection issue is different, for Rhema raised it, for the first time, in this second proceeding—and only in this court, not before the Board. On the assumption most favorable to Rhema, that this second proceeding presents a new claim, the equal protection issue is not barred by *res judicata*. Nor is it barred by collateral estoppel since it was not actually litigated in the first proceeding. But there is another problem.

Ordinarily, "we do not consider claims raised for the first time on appeal." *Smith v. Police and Firemen's Retirement and Relief Board*, 460 A.2d 997, 999 (D.C.1983). If, however, the Board was not empowered to rule on such a constitutional

claim, we are the first tribunal that could do so—assuming (without deciding) that Rhema had the right to seek our ruling on that issue on direct review of the Board's action on the special exception, rather than having to proceed directly to Superior Court. *See Debruhl*, 384 A.2d at 425. But even if, on an adequate record, we would so rule, there is no such record for us to review. The Board's proceedings did not include evidence as to why public schools are permitted as of right in any residential zoning district, or as to whether and why the Board has granted special exceptions for other private schools in the relevant neighborhood. Thus, we have no record basis for even beginning an equal protection analysis. In short, Rhema's equal protection claim fails for lack of a record (if not because of *res judicata* ).

## IV.

This opinion, primarily concerned with preclusion doctrine, is premised on maximum deference to the possibility that the Board, in an ambiguous ruling, has legitimately interpreted both the record and the moratorium regulation in the light most favorable to Rhema's pursuit of its second application for a special exception, unhindered by *res judicata*. Were it not clear, however, that the Board's ruling should be affirmed on this deferential basis, we would have remanded for the Board to reconsider its ruling in light of preclusion doctrine. We have considerable doubt that Rhema's second application, the hearing record, and the moratorium regulation would have survived a *res judicata* analysis if the Board had squarely addressed that possibility.

■■■ We recognize that in many instances the Board will be reluctant not to address the merits of a second application for ostensibly the same special exception unless a preclusion bar is quite clear. But if the Board believes it must address the merits as a precaution, we perceive no reason why it should not forthrightly announce a *res judicata* ruling in the alternative, to facilitate our review, if the Board does conclude that a second application reflects the same claim as one previously denied. As the Rhema litigation makes clear, preclusion doctrine has an important role in assuring finality to Board proceedings, the integrity of the zoning plan, and respite for property owners who seek to uphold that plan. *Fisher*, 120 N.H. at 190–91, 412 A.2d at 1027.

*Affirmed.*

## APPENDIX

11 D.C.M.R. (1982) provides in relevant part:

SECTION 3101—R–1 DISTRICTS (ONE-FAMILY DETACHED DWELLINGS) (INCLUDING R–1 AND R–1–B DISTRICTS)

\* \* \* \* \* \*

3101.3 The following uses are permitted as a matter of right:

\* \* \* \* \* \*

3101.32 Church or other place of worship, but not including rescue mission or temporary revival tents.

3101.33 Parsonage, vicarage, rectory, or Sunday school *building.*

\* \* \* \* \* \*

3010.311 *Public schools,* subject to the provisions of Article 72 [off street parking] of these regulations.

3101.4 The following uses are permitted if approved by the Board of Zoning Adjustment subject to the conditions specified in Section 8207 and below in each case:

3101.4 A private school in the form of a kindergarten or serving a pre-school group, provided . . .

\* \* \* \* \* \*

3101.42 Other private school, but not including a trade school, and residences for teachers and staff of a private school provided that:

3101.421 It is so located that it is not likely to become objectionable to adjoining and nearby property because of

noise, traffic, number of students, or otherwise objectionable conditions;

3101.422 Ample *parking space*, but not less than that required in Article 72 of these regulations, is provided to accommodate the students, teachers, and visitors likely to come to the site by automobile.

3101.5 The following accessory uses incidental to uses permitted by this section are permitted:

3101.51 Tutoring of not more than three students at any one time, provided ...

\* \* \* \* \* \*

3101.56 Other accessory uses customarily incidental to the uses permitted in R–1 Districts under the provisions of this section ...

SECTION 3102—R–2 DISTRICTS (ONE-FAMILY SEMI-DETACHED DWELLINGS)

\* \* \* \* \* \*

3102.3 The following uses are permitted as a matter of right:

3102.31 Any use permitted in R–1 Districts under sub-section 3101.3 of this article.

\* \* \* \* \* \*

3102.4 The following uses are permitted if approved by the Board of Zoning Adjustment subject to the conditions specified in Section 8207 and below in each case:

3102.41 Any use permitted in R–1 Districts under sub-section 3101.4 of this Article.

\* \* \* \* \* \*

3102.5 The following *accessory uses* or *accessory buildings* incidental to the above uses are permitted:

3102.51 Any *accessory use* permitted in R–1 Districts under sub-section 3101.5 of this Article.

\* \* \* \* \* \*

3102.53 Other *accessory uses, buildings,* or *structures* custo[ma]rily incidental to the uses permitted in R–2 Districts under the provisions of this Section.

\* \* \* \* \* \*

8207 ORIGINAL JURISDICTION

\* \* \* \* \* \*

8207.2 Pursuant to authority contained in the Zoning Act of June 20, 1938 (52 Stat. 797), D.C.Code § 5–424(g)(2), as amended, the Board is authorized to grant special exceptions as provided in the preceding Articles of these regulations where in the judgment of the Board such special exceptions will be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property in accordance with said zoning regulations and maps, subject in each case to the special conditions specified in said Articles, ...

[Emphasis in original.]