Donald TOWLES, et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, et al., Respondents.

No. 89–1243.

District of Columbia Court of Appeals.

Argued June 19, 1990.

Decided July 24, 1990.

Tony Norman, with whom Kenneth E. Sealls, Washington, D.C., was on the brief, for petitioners.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondents.

Before ROGERS, Chief Judge, TERRY and FARRELL, Associate Judges.

ROGERS, Chief Judge:

After two unsuccessful applications for a special exception to operate a parochial school at its church in a residential neighborhood, the Board of Zoning Adjustment (the Board) granted Rhema Christian Center's third application. The Board concluded that a material change of circumstances affecting the merits of the application had occurred since the previous unsuccessful applications and that the special exception would be in harmony with the general purpose and intent of the Zoning Regulations and, subject to certain conditions, not adversely affect the use of neighboring property. Petitioners, whose property either abuts or is within one block of the church, contend that the Board was precluded by *res judicata* and collateral estoppel from adjudicating the merits of Rhema's third application and, alternatively, that the Board's decision was not supported by substantial evidence in the record and violates petitioners' constitutional right to full enjoyment of their property. We hold that the Board's findings in support of its conclusion that there has been a material change in circumstances affecting the merits of Rhema's third petition are unsupported by the record and, hence, its conclusion of a material change in circumstances was an abuse of discretion. Accordingly, we reverse.

I.

Since 1981 Rhema Christian Center has been operating a parochial day school at leased space in the Faith United Church, three blocks away from its own church facilities at 4915 Sargent Road, N.E., located in an R–2 residential zoning district. Rhema, originally seeking to operate its school at its own facilities as an accessory use, was advised by the Zoning Administrator that it must first obtain a special exception from the Board of Zoning Adjustment. In 1982, the Board denied Rhema's first application for a special exception to use

the church as a day school for eighty students and six staff.[1] The application included a proposal to use approximately 8,000 square feet of lot area for an outdoor play area and on-site parking. The Board ruled that Rhema had not met its burden of proof to show that the proposed enrollment came primarily from children residing in the neighborhood and that the program was a use reasonably necessary to the neighborhood, and further, the Board concluded that eighty students and six teachers would be objectionable to adjoining and nearby property because of noise, the number of students, and the close proximity to residential dwellings.

On May 22, 1984, Rhema filed a second application for a special exception permitting the church to operate a parochial day school with eighty students and six teachers, but without the previously proposed pre-school and adjacent lot uses, which the Board similarly denied. The Board found that the new application was not significantly different from the original application and that the proposed school would adversely affect the use of the neighboring property due to traffic and noise generated by the number of students in close proximity to residential dwellings. Rhema appealed to this court which affirmed the denial of the special exception petition. *Rhema Christian Center v. District of Columbia Board of Zoning Adjustment*, 515 A.2d 189 (D.C.1986) (*Rhema I*).

On April 18, 1989, Rhema filed a third petition for a special exception to establish the parochial school for eighty children and a staff of six at its church facilities. The Board ruled that it was not precluded from reviewing the merits of Rhema's third petition because the record showed a material change of circumstances which affected the merits of the application. Those circum-

stances were (1) the passage of four and one half years since Rhema's second application; (2) the amendment on November 5, 1982 to the special exception criteria in the Zoning Regulations; (3) the substantial amendment of the parking regulations, effective March 1, 1985; (4) the change in the number and location of on-site parking spaces and use of outdoor areas from the original application; (5) the substantial development of church property since the original application in 1982; and (6) Rhema's operation of the school at a nearby location for about eight years "with no evident adverse impacts on residential properties adjacent to the site." The Board concluded, therefore, that the petition should be granted, subject to certain conditions, because the proposed school would not result in any adverse impact on neighboring property.[2] Petitioners contend that there was not substantial evidence showing a material change in circumstances between Rhema's second application in 1984 and its third application in 1989 and that, therefore, the Board was precluded from adjudicating the merits of Rhema's third application.

## II.

 Generally, once a claim has been finally adjudicated, the doctrine of claim preclusion, or *res judicata*, prevents the same parties from relitigating the same claim, including any issue that either was or might have been raised in the first proceeding, and the doctrine of issue preclusion prevents the same parties from relitigating an issue actually decided in a previous, final adjudication, whether on the same or a different claim. *Rhema I*, 515 A.2d at 193. When a special exception is denied and the applicant, after a required waiting period,[3] resubmits the same or a

---

1. As originally submitted, the application referred to sixty students.

2. The conditions primarily relate to landscaping and litter controls. The Board also concurred in the recommendations of the Office of Planning for screening parking areas abutting residential property, paved parking and access areas, lighting conditions, and outdoor student play only with supervision.

3. An appellant or applicant whose appeal or application has been denied shall not institute a new appeal or application on the same facts within one (1) year from the date upon which the Board issued its order upon the previous appeal or application.

11 DCMR § 3102.3 (1986) (quoted in *Rhema I*, 515 A.2d at 195–96). The timeliness of Rhema's third application, filed April 18, 1989—over two and one half years after the appeal of their

substantially similar application, the applicant must demonstrate either that there has been a material change in conditions, such that the reasons for the previous denial no longer apply, or that the application does not involve the same claim. *Id.* at 194. The court explained:

> When a material change of circumstances affecting the merits of the application has not occurred [and] the application is not for a use that materially differs in nature and degree from its predecessor, the board of adjustment may not lawfully reach the merits of the petition. If it were otherwise, there would be no finality to proceedings before the board of adjustment, the integrity of the zoning plan would be threatened, and an undue burden would be placed on property owners seeking to uphold the zoning plan.

*Id.* at 194 (quoting *Fisher v. City of Dover*, 120 N.H. 187, 412 A.2d 1024, 1027 (1980)).

■ Our scope of review of the Board's determination that there has been a material change of circumstances is limited to whether there has been an abuse of discretion. *See Silsby v. Allen's Blueberry Freezer, Inc.*, 501 A.2d 1290 (Me.1985) (standard of review regarding substantive change of circumstances is abuse of discretion); *see also Bennett v. City of Clemson*, 293 S.C. 64, 358 S.E.2d 707 (1987) (zoning adjustment board's decision to consider subsequent application reviewable only for abuse of discretion); *Mazza v. Board of Adjustment of City of Linden*, 83 N.J.Super. 494, 200 A.2d 505 (1964), *appeal dismissed*, 47 N.J. 161, 219 A.2d 615 (1966) (same). The Board's findings of fact in support of that determination, however, must be "supported by reliable, probative and substantial evidence in the record as a whole, and ... the Board's conclusions [must] flow rationally from these findings." [4] "There must be a demonstration of a rational connection between the facts

found and the choice made [citations omitted]. Generalized, conclusory, or incomplete findings are not sufficient.... In short ... there must be findings on each material fact with full reasons given to support each finding." *Dietrich v. District of Columbia Board of Zoning Adjustment*, 293 A.2d 470, 473 (D.C.1972).

■ In *Rhema I*, the court summarized the two previous applications, and petitioners attached to their petition for review, without objection, a copy of the Board's decision denying the second application.[5] Board of Zoning Adjustment Application No. 14156, unpublished decision (November 20, 1984) (1984 Board Decision). Upon review of the record before the Board we conclude that the Board's findings do not support its conclusion that there are material differences between the second and third applications. Rhema still seeks to operate a school for eighty students and six teachers, still confining the use of outside space to parking; the number of on-site parking places has been increased from five to ten, but on-site parking was not of concern when the Board denied the second application and hence its provision now is of doubtful relevance. Accordingly, to avoid the effect of preclusion, the Board could not rely on a change in the nature of the application but only on a change in material circumstances relating to the application. Furthermore, in view of the basis for its previous rejection of Rhema's second application, the changed conditions would have to relate directly to the matters that were of concern to the Board in the prior proceeding for the Board to grant the special exception. *Rhema I, supra*, 515 A.2d at 193–94 (applicant resubmitting same application must demonstrate that conditions have changed such that the reasons for the previous denial no longer apply).

---

second application was decided on September 10, 1986—is not contested.

**4.** *Monaco v. District of Columbia Board of Zoning Adjustment*, 407 A.2d 1091, 1101 (D.C.1980) (citing *Stewart v. District of Columbia Board of Zoning Adjustment*, 305 A.2d 516, 518 (D.C. 1972)); D.C.Code § 1–1509(e) (1989 Supp.).

**5.** Rhema's prior applications are not in the record; nor is any documentation that was before the Board in consideration of these two earlier applications, such as survey plats or other descriptions of Rhema's facilities and the surrounding neighborhood.

■

■ Turning to each of the Board's findings in support of its conclusion that there is a material change in the third application affecting the merits of the application, the first is the passage of time. This is irrelevant standing alone, once the threshold of a year has passed, except insofar as that circumstance is tied to other relevant circumstances. *Id.* at 193–94. Other than the implied significance of the passage of time to the Board's sixth finding, regarding Rhema's operation of the school at a nearby site for eight years, the Board's first finding lends no weight to its conclusion of a material change between the third and prior applications. In any event, the Board has failed to "demonstrate [the] logical nexus between the facts relied upon [—the passage of time—] and the conclusion reached." *Dupont Circle Citizens Association v. District of Columbia Board of Zoning Adjustment,* 390 A.2d 1009, 1013 (D.C.1978). *See also Washington Ethical Society v. District of Columbia Board of Zoning Adjustment,* 421 A.2d 14, 16 (D.C. 1980) (citation omitted).

■ Second, the Board found that the special exception criteria in the Zoning Regulations had been substantially amended on November 5, 1982. These regulations relate to the establishment of child development centers. *See* 29 D.C.Reg. 4968 (1982). The Board fails to explain how the amendment affects the merits of Rhema's application. Reading the regulations does not explain whether or how the amendment affects Rhema's burden, which the Board found it had failed to meet in its two prior applications, to show that the proposed facilities would not adversely affect the use of neighboring property owners because of noise, traffic and proximity to residential property. While the court will defer to an agency's interpretation of its substantive regulations, *George Washington Univ. v. District of Columbia Board of Zoning Adjustment,* 429 A.2d 1342, 1348 (D.C.1981), such deference is impossible where the interpretation consists solely of a conclusory finding that the amendment constitutes a material change in circumstances affecting the merits of the petition. Moreover, the special exception amendment occurred in 1982, before the

Board's rejection of Rhema's second application, and therefore, would hardly appear to be a change in circumstance. At oral argument the Board conceded that this finding could not support its conclusion that a material change in circumstances had occurred.

With regard to the parking amendment, the Board's third finding to avoid the preclusion doctrine, the Board noted that previously a church located in a residential area was not required to provide on-site parking. The Board found, however, that the additional parking places off Delafield Place proposed in Rhema's third application would result in a "greater impact" on the residences facing Delafield Place than limiting on-site parking to the five parking spaces accessed directly from Sargent Road, "which is already heavily travelled with commuter traffic during rush hours." Further, the Board's 1984 decision indicates that Rhema's second application already included five on-site parking spaces, although the decision did not specify their location. 1984 Board Decision at 3. Consequently, it is unclear precisely how the Board views the effect of the parking amendment and the additional on-site parking spaces. On one hand, the Board relies on them in finding that a material change in circumstances has occurred; on the other hand, the additional parking spaces will adversely affect the neighbors. In any event, at oral argument the Board abandoned this finding in support of its conclusion.

The Board also relied, in its fourth finding, on the number and location of on-site parking spaces and the use of outdoor areas. From *Rhema I* it is clear that Rhema's first application for special exception contained a proposal for the use of an adjacent lot as an outdoor play area and parking lot, while the second application omitted such a proposed use of the outdoor area, as a play area. 515 A.2d at 191–92, 195. Both applications were denied, in substantial part, because the proposed school was objectionable to the adjoining and nearby property because of noise, traffic, number of students, and close proximity to residential property. *Id.* at 191–92. Fur-

ther, the Board concluded, and this court affirmed, that the second application, notwithstanding the difference in proposed use of the outdoor area, was "not significantly different" from the first application and the court was of the view that the Board could have decided that its review of the second application was barred by the preclusion doctrine. *Id.* at 195. Consequently, the Board determined that the proposed school in the first and second applications was objectionable both with and without an outdoor play area. Yet, without elaboration or explanation, the Board has found that Rhema's third application proposing the same use of the outdoor area, with the addition of five parking places, constituted a material change affecting the merits of Rhema's petition. Again, the decision of the Board fails to make clear how the outdoor use proposed in the third application is materially different from that proposed in the second application.

Similarly, the Board relied in its fifth finding on the substantial development of Rhema's church facilities since its original application in 1982. Specifically, the Board found that construction of a new sanctuary frees up the old sanctuary area for primary classroom use. The Board also makes findings regarding the construction materials (concrete block) and closed windows due to central air and heating. However, the Board has not explained how this development affects the merits of Rhema's petition for special exception. While there was testimony that Rhema has built a new sanctuary, the record does not indicate the year when the new sanctuary was built (before or after the second application) and there was testimony before the Board that this had not occurred since the second application had been denied. Nor has the Board indicated how the use of the old sanctuary will reduce the noise or other adverse characteristics found by the Board to be associated with the school in denying the second application. The findings regarding the

concrete construction and sealed windows and absence of outdoor congregation by the students might, under some conditions, support a finding by the Board that its previous concerns about noise no longer exist, but Rhema made no showing that these conditions reflected changes since the second application and the Board's 1984 decision indicates otherwise.[6] 1984 Board Decision at 3.

Finally, the Board relies on the fact that Rhema has operated its school at a nearby location without any adverse affects on the neighboring residential property. This condition existed when Rhema submitted its second application. In denying Rhema's previous application, however, the Board found that when the impact of a church in a residential neighborhood "[is] magnified by the addition of a school of eighty students, as proposed herein [in the second application], the number of students and the amount of traffic and noise rises beyond a level that is acceptable." 1984 Board Decision at 8. Further, the Board found that "[w]hat is dispositive of this [second] application is that ... the proposed use is not in harmony with the general purpose and intent of the Zoning Regulations and will tend to affect adversely the use of neighboring properties." *Id.* at 9. The Board expressed concern about noise and traffic. *Id.* Given these fairly sweeping conclusions and concerns, fairly sweeping responses would appear to be required. Reference to the school's impact on neighboring areas, while relevant with respect to the effect of the school on neighboring properties, is not the same as evidence indicating whether there has been a material change in circumstances affecting the merits of Rhema's application. Nothing in the record suggests that the present school situs and the proposed situs are comparable in relevant ways; indeed, the record tends to support a contrary inference insofar as the volume of commuter traffic along Sargent Road and attendant student

6. Moreover, the court is placed in the difficult, if not impossible position of trying to review changes in Rhema's facilities and evaluate their effect on the merits of Rhema's application without having in the record the previous appli-cations and related survey plats reflecting the state of Rhema's facilities at those times. However, as the applicant for a special exception, Rhema had the burden of proof and offered no such documentation at the hearing.

safety are concerned.[7] In addition, the Board totally ignored testimony about the detrimental effects in the immediate neighborhood of the operation of a summer school at Rhema's church facilities. This testimony, relating to actual experience with a school on the proposed site, was possibly the most relevant testimony that the Board heard, albeit that a summer school is not the same as a regular year-round school, and yet its decision makes no reference to it. Indeed, the problems associated with a summer school would presumably be less than those associated with a year-round school, and yet there was evidence before the Board that the problems with a summer school were not inconsequential to the neighbors.

Opponents of Rhema's application to establish a parochial school raised the preclusion issue several times at the hearing before the Board. Rhema's representatives, who appeared without counsel, failed to respond directly to the preclusion issue although they had the opportunity to do so. Given the existence of *Rhema I,* in which Rhema as well as the Board was clearly informed of the obstacle that had to be surmounted before the Board could reach the merits of a subsequent application, there is no basis on which to conclude that the parties were not on notice of their burden.[8] Combined with the Board's reliance on five additional parking spaces at the rear of the property accessed by Delafield Place, some landscaping, and what appears to be an assumption of almost noiseless children, the six findings relied on by the Board for the inapplicability of the preclusion doctrine hardly rise to the task.

Accordingly, having found the Board's findings of fact conclusory, incomplete, and lacking a logical nexus to its conclusion, we hold that the Board's determination that

there had been a material change of circumstances was an abuse of discretion, and reverse.

*Reversed.*

---

**7.** The Board's 1984 decision indicated that the second application would be denied even if Rhema constructed a turn-around area so that arriving cars could get out of the line of rush hour traffic before dropping off or picking up students at the school. 1984 Board Decision at 5.

**8.** Unfortunately, no member of the Board focused or directed those appearing at the hearing to focus on the preclusion issue. At times it is

not entirely clear from the hearing transcript that the Board was aware of the significance of this issue. A large portion of the hearing related to discussion of existing noise, traffic, and parking problems associated with the church, and church community relations, rather than the school—issues that the Board correctly noted are irrelevant to the proceeding.